## VOLK et al. v. PARAMOUNT PICTURES, Inc., et al.

### Civ. A. No. 2577.

United States District Court
D. Minnesota, Fourth Division.

June 15, 1950.

The primary purpose of the requested pre-trial conference was to obtain a ruling from this Court as to the applicability as prima facie evidence in this proceeding of the final judgments entered or to be entered by the expediting court in United States v. Paramount, D.C., 66 F.Supp. 323, and companion cases. It was held there that these defendants had entered into an illegal conspiracy to fix minimum admission prices in licensing motion picture films. Defendants urge that the Clayton Act. Section 16, Title 15 U.S.C.A., is wholly inapplicable to the instant type of suit.

Plaintiffs are motion picture exhibitors operating theaters in Minneapolis. They are seeking in this proceeding a declaratory judgment that certain motion picture exhibition license agreements made with each of these national distributors of copyrighted motion picture films are invalid and in violation of the anti-trust laws of the United States. The claimed invalidity pertains to an alleged conspiracy of the eight distributor defendants to fix minimum admission prices in the license contracts of motion picture films. It is alleged that certain license agreements from defendants to plaintiffs are illegal because of such conspiracy, and that defendants are asserting or seeking to enforce certain claims based upon fraud against plaintiffs for alleged shortages in gross admission receipts upon which defendants' film rentals were based. In addition to seeking a determination of the validity of the license agreements, plaintiffs seek an injunction to restrain defendants from enforcing the agreements against plaintiffs.

Benedict Deinard and Melvin H. Siegel, of Minneapolis, Minn. (Leonard, Street and Deinard, of Minneapolis, Minn., of counsel), for the plaintiffs.

David Shearer, of Minneapolis, Minn., and Edward A. Sargoy, of New York City (Shearer, Byard, Trogner & Peters, of Minneapolis, Minn., and Sargoy & Stein, of New York City, of counsel), for the defendants.

NORDBYE, Chief Judge.

The question presented to the Court for determination in the above proceeding arose during a hearing at which plaintiffs presented a motion to the Court for a pre-trial conference under rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A.

At the outset, it is clear that plaintiffs do not contend that there is any continuing or threatened conspiracy on the part of these defendants to violate the anti-trust laws with reference to the price-fixing provisions in any license contracts between the parties. Such alleged illegal practices ceased in the year 1946. Moreover, plaintiffs are not seeking to recover any damages *as such* by reason of the alleged illegal price fixing. This suit under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 2201, 2202, was instituted by plaintiffs after four of these defendants had insti-

tuted separate suits for damages based upon tort against these plaintiffs for fraudulent misrepresentation as to box-office receipts derived from pictures licensed on a percentage basis and for damages growing out of voluntary deductions granted by defendants in leasing certain percentage and flat rental pictures by reason of the alleged fraudulent misrepresentations as to box-office receipts, and in addition a claim for damages on the further ground that defendants were induced to grant future licenses to plaintiffs on flat rental percentage bases on the basis of fraudulent misrepresentations of receipts by plaintiffs. Plaintiffs invoke the jurisdiction of this Court on the grounds of diversity of citizenship and the requisite amount in controversy. Upon plaintiffs' institution of the present suit against all eight distributors, the four defendants who had initiated the original proceeding dismissed those four suits without prejudice upon stipulation of the parties and then the eight defendants herein filed counterclaims in the Federal Declaratory Judgments suit setting forth the same type of claims as were originally asserted by the four defendants in their original actions. Plaintiffs deny any misrepresentation of box-office receipts and assert that if any claims do exist for such a wrongdoing, they necessarily arise out of and are an integral part of the unlawful transactions committed by defendants in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, the common law, and the public policy of the State of Minnesota, and hence are unenforcible whether based in tort or on contract. The Court will be required to determine whether any or all of these claims which may be established by the defendants are unenforcible because of anti-trust violations or other acts by defendants. Obviously, it may be expedient to determine first whether the decree or decrees entered as to price fixing in the suits before the expediting court are final, and, if so, whether they are prima facie evidence of such violations in this proceeding so that a lengthy and initial trial in this Court on the issue of defendants' anti-trust violations may be avoided. This is the situation, therefore, which was presented to the Court at the pre-trial conference, and which presents a question as to the applicability herein of the Clayton Act, Section 16, Title 15 U.S.C.A. This section provides: "A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the anti-trust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken."

■ This section, by its terms, requires that the action in which the existing decree is sought to be used should be one arising under the anti-trust laws. In their Federal Declaratory Judgments action, plaintiffs invoke the jurisdiction of this Court upon the general jurisdiction statute of diversity of citizenship, 28 U.S.C.A. § 1332. It would seem, therefore, that the theory upon which plaintiffs invoke the jurisdiction of this Court negatives the contention that the instant action arises under the anti-trust laws as required by 15 U.S.C.A. § 16. In any event, it seems clear that in using the terms "under the anti-trust laws" and "under said laws" in Section 16, Congress was referring to actions based upon Sections 1 to 27 of 15 U.S.C.A., which comprise the anti-trust laws, and necessarily intended, therefore, that private actions in which the plaintiff seeks to use a previous decree to establish his prima facie case must be predicated either upon Section 15 or Section 26, which are the only provisions granting to private persons statutory rights of action for anti-trust violations. Section 16 does not purport to be effective in private actions seeking relief based primarily upon the common law. It refers by its terms and nature to actions seeking remedial relief based upon statutory rights. It was

enacted simultaneously with Sections 15 and 26. They are part of the same framework aimed at the abuses sought to be prevented. Courts long have held that provisions of the same statute must be interpreted in the light of each other. And the debates in Congress show that Section 16 was enacted in aid of, and supplementary to, Sections 15 and 26. For throughout the debates on Section 16, it was assumed or stated that Section 16 was concerned with proceedings in which a private person was seeking relief from damages suffered or anticipated from anti-trust act violations. It was anticipated that the facilitation of private damage suits against anti-trust violators would aid the Government in its attempt to curb such illegal activities. Nowhere does the Congress appear to have contemplated its different application. Section 15 and Section 26 are the statutes which give rights of action where damage arises or is anticipated from anti-trust violations. And they are confined to those situations where damage or threatened injury exists. Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747; Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 148 F.2d 580. No other parts of the anti-trust laws are of that nature. Nowhere has an intent to broaden the scope of Section 16 appeared.

■ Plaintiffs' proceeding here cannot be recognized as one under Section 15 or Section 26. Plaintiffs are not seeking in their declaratory judgments any recovery for any injury to their business or property by reason of defendants' alleged anti-trust violations. They make no claim that their business or property has been injured by defendants' illegal acts. For aught that appears herein, the fixing of minimum admission prices may have benefited plaintiffs' business. Plaintiffs assume to characterize their action as one which seeks to protect their rights from the exaction of a monopoly admission price, but a *defense* against the collection of the purchase price of a monopoly priced commodity is not a right provided by those sections of the anti-trust laws. A buyer who is required to purchase at a price fixed by a conspiracy of sellers may not be damaged at all.

Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 148 F.2d 580; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 542, 22 S.Ct. 431, 46 L.Ed. 679; Bruce Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219. The undeniable fact is that plaintiffs are seeking to utilize the anti-trust violations as a bar to the collection of any damages which may have been caused by their own derelictions for the reason that public policy should deny defendants any relief. But the sanctions countenanced by the courts when relief is sought by law violators are not based upon the rights of the person sued, but, rather, are bestowed by reason of public policy. Continental Wall Paper Co. v. Voight, 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486. Indeed, persons may have profited by anti-trust violations, but nevertheless the defense of public policy may be available to them in actions brought against them to recover moneys due and owing. But no deference to the parties involved is considered in leaving the parties where they are in such illegal activities. It is a common law principle based upon public policy.

■ The defense plaintiffs assert here arises because the anti-trust law assumedly declares unlawful the acts which plaintiffs allege. The nature of the consequences which follow from such acts, and which is the question here presented to the Court, is left to judicial determination, not to statutory pronouncement. The conflict of the alleged acts with the public policy represented by the anti-trust laws makes the defense a valid one by judicial, not statutory, determination, Sola Elec. Co. v. Jefferson Co., 317 U.S. 173, at page 176, 63 S.Ct. 172, 87 L.Ed. 165, and consequently constitutes it a common law, not a statutory anti-trust defense or proceeding. Because the interpretation and indirect application of a federal statute is involved does not mean that the action arises out of that federal statute. Certainly, there is nothing in the history of the Act or language employed in Section 16 which would justify the view that Congress intended that this section should be utilized by those who not only were not damaged

by the law violator, but were intending to utilize the benefits of this section in order to obtain a windfall for themselves. Sanctions imposed upon violators under the anti-trust laws are not granted as an element of damages. They are imposed regardless of whether the person is injured in his business or property by reason of anything forbidden in the Act. Relief by reason of injury to business or property, as such terms are used in the Act, does not embrace relief by way of sanctions imposed under the anti-trust laws. Sanctions as such have no relation to injuries sustained because of violations of the anti-trust laws.

It may not be amiss to observe that defendants could have brought their actions in State Court for damages, and plaintiffs could have defended on the same grounds as are asserted herein, to wit, that the transactions upon which the distributors based their claims for damages are an integral part of the conspiracy to violate the anti-trust laws. Under such circumstances, it could not be maintained successfully that such a defense was a proceeding within the purview of Section 15 or Section 26. True, in such a State Court proceeding, federal law rather than substantive law would control. Sola Elec. Co. v. Jefferson, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165; McGregor v. Westinghouse Elec., 329 U.S. 402, 67 S.Ct. 421, 91 L.Ed. 380, but notwithstanding, the State Court could retain jurisdiction. Proceedings which may give rise to questions under the anti-trust laws are not necessarily those which fall within the ambit of Section 15 or Section 26.

The contention that the payment of the unpaid purchase price on the films which were licensed before the alleged violations terminated will serve as a continuance or furtherance of a restraint of trade or monopoly seems unfounded. The alleged conspiracy is at an end. It is neither continuing nor threatening. The injunctive relief herein is directed to the obtaining of an order absolving these plaintiffs from their own alleged law violations. It is not directed to the enjoining of a continuing or threatened conspiracy under the anti-trust laws. The fact that a multiplicity of suits may be threatened by these defendants in seeking to obtain damages because of misrepresented box-office receipts is not the type of an equity action within the meaning of Section 26. The claim for damages growing out of plaintiffs' alleged wrongdoing is not a furtherance of any conspiracy to violate the anti-trust laws. In other words, plaintiffs do not seek injunctive relief to obtain immunity from *injury or threatened injury* by reason of the violation of the anti-trust laws, but, rather, to obtain immunity from paying defendants moneys of which defendants were allegedly fraudulently deprived. This is not a right granted by the anti-trust laws as such. In Rambusch Decorating Co. v. Brotherhood of Painters, 2 Cir., 105 F.2d 134, and South Side Theaters v. United West Coast Theatre Corp., 9 Cir., 178 F.2d 648, upon which plaintiffs rely, there was a continuing or threatened violation of the anti-trust laws, and the proceeding by way of the Federal Declaratory Judgments Act, therefore, gave rise to a federal question under the anti-trust laws. These cases were not concerned with the applicability of Section 16, Title 15 U.S.C.A. The distinction between these cases and the instant one seems apparent. Here, we have no continuing or threatened violation of the anti-trust laws within the purview of Section 26.

■ Summarizing, therefore, I conclude that plaintiffs may be able to justify the enforcement of sanctions against these defendants in furtherance of public policy if the relief which defendants seek in tort by way of damages for fraudulent underreporting of gross receipts is an integral part of a conspiracy to violate the anti-trust laws, but such an attack on the right to recover is not a suit for damages growing out of an injury to plaintiffs' business or property. Nor is it an equitable proceeding against threatened loss or damages by violators of the anti-trust laws. My conclusion, therefore, is that Section 16, Title 15, U.S.C.A., is not applicable to the present proceeding.

An exception is allowed.