# NICK VAN ASPEREN v. DARLING OLDS, INC., AND ANOTHER.

93 N. W. (2d) 690.

December 12, 1958—No. 37,525.

64

*Fred Albert* and *Warren Dirks,* for appellant.

*Samuel Saliterman, Michael Robins,* and *Liptschultz, Altman, Geraghty & Mulally,* for respondents.

*Mackall, Crounse, Moore & Helmey,* for Commercial Credit Company and General Motors Acceptance Corporation, amici curiae.

*Jerome B. Simon* and *Bundlie, Kelley & Maun,* for Industrial Credit Company, amicus curiae.

*Clarence O. Holten,* for The Minnesota Automobile Dealers Association, amicus curiae.

*Raymond J. Julkowski,* for Minnesota Bankers Association, amicus curiae.

*Claude H. Allen* and *Allen, Courtney & Keyes,* for Minnesota Finance Conference, amicus curiae.

NELSON, JUSTICE.

This litigation arises under the Motor Vehicle Retail Installment Sales Act enacted by the legislature effective July 1, 1957, by L. 1957, c. 266 (M. S. A. 168.66, et seq.), and involves the purchase of a 1957 Oldsmobile under a conditional sales contract between plaintiff as purchaser and defendant Darling Olds, Inc., an automobile dealer, as seller, executed on or about August 12, 1957.

The cash sale price of the vehicle was $4,097.95. Plaintiff was given a trade-in allowance of $1,153 on his 1956 Oldsmobile and made a

downpayment of $279.24 in cash, leaving an unpaid balance of $2,665.71. It was necessary for him to pay off the balance by means of a conditional sales contract providing for installment payments over a period of greater than 1 year; i. e., 36 equal monthly installments, these to include finance charges amounting to $560.25, described in the conditional sales contract as a time price differential. The credit price was therefore $4,658.20. After completion of the transaction the contract was sold and assigned to defendant American National Bank.

It is plaintiff's claim according to the complaint that the time price differential of $560.25 specified in said conditional sales contract exceeds the maximum permitted under the aforesaid 1957 act. The defendant Darling Olds, Inc., moved the court below for an order dismissing plaintiff's claim against it for failure to state a claim upon which relief might be granted, said defendant further stating that it sought relief upon grounds as provided by the Minnesota rules of civil procedure and upon such other grounds as to the court might seem just and equitable. For the purposes of the motion it admitted all of the allegations and facts as set forth in plaintiff's complaint to be true. The court granted the motion to dismiss, and plaintiff appeals from the order.

Plaintiff contends that one of the questions involved is: "Whether the time price differential shall be computed on the original principal balance for duration of the indebtedness notwithstanding regular periodic payments, or whether the time price differential shall be computed on the declining balances." Plaintiff apparently has no fault to find with the statute where an installment contract provides for payments extending for a period of 1 year or less but contends that, if the installment payments extend for a period greater than 1 year, then the time price differential should be computed on the declining balances only. Plaintiff also urges that because sellers of automobiles under an installment plan are required to set a cash price as though the sale were for cash instead of under an installment plan, the deferred payments thereby become a "forbearance," and that it follows that under such a situation such unlicensed seller must be regulated by the interest laws of our state; namely, M. S. A. 334.01. Plaintiff further suggests another question as being involved on this appeal; namely, "Whether or not plaintiff was entitled to an injunction enjoining the defendants from

interfering with his use and possession of the vehicle, and leave to pay his installments into court pending disposition of the case." It is clear, however, that the latter question does not go to the main issue involved on this appeal.

Defendants contend that the time price differential charge is well within the maximum amount permitted by the 1957 act and that had defendants insisted upon the full price differential permitted under its provisions the same would have amounted to $639.78 under § 168.72, which provides:

"(a) The time price differential authorized by sections 168.66 to 168.77 in a retail installment sale shall not exceed the following rates:

"Class 1. Any motor vehicle designated by the manufacturer by a year model of the same or not more than one year prior to the year in which the sale is made—$8 per $100 per year.

"Class 2. Any motor vehicle designated by the manufacturer by a year model of two or three years prior to the year in which the sale is made—$11 per $100 per year.

"Class 3. Any motor vehicle not in Class 1 or Class 2—$13 per $100 per year plus a flat charge of $3 for each such retail installment sale.

"(b) Such time price differential shall be computed on the principal balance as determined under section 168.71(b) and shall be computed at the rate indicated on contracts payable in successive monthly installment payments substantially equal in amount extending for a period of one year. On contracts providing for installment payments extending for a period less than or greater than one year, the time price differential shall be computed proportionately.

"(c) When a retail installment contract provides for unequal or irregular installment payments, the time price differential shall be at the effective rate provided in subsection (a) hereof, having due regard for the irregular schedule of payment.

"(d) The time price differential shall be inclusive of all charges incident to investigating and making the contract, and for the extension of the credit provided for in the contract and no fee, commission, expense or other charge whatsoever shall be taken, received, reserved or contracted for except as provided in sections 168.66 to 168.77."

It appears that the main contention on the part of the plaintiff is that the time price differential was computed proportionately over a 3-year period under the provisions of § 168.72(b). Had the time price differential in this case been arrived at upon the basis of $8 per $100 per year for the time period it will take to liquidate the balance due on the automobile here involved, the figures would have been as follows:

$2,665.71   Unpaid principal balance, times
x   .08   $8.00 per $100.00, equals the

213.26   maximum allowable charge per
x   3   year, times the term of the con-

639.78   tract in years, equals the maximum
time price differential allowable.

It stands conceded that the time price differential charge in the instant case was $560.25.

▮ The credit price charged as the purchase price of an automobile sold on time has long been interpreted, practically uniformly, by the courts as including an additional sum to which the seller is entitled in consideration for his deferring the payment of the purchase price. See, Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 289 N. W. 411; In re Bibbey (D. Minn.) 9 F. (2d) 944; Hogg v. Ruffner, 66 U. S. (1 Black) 115, 17 L. ed. 38.

The aforesaid rule has become well settled in this state, and we have held, as was stated in the Dunn case (206 Minn. 554, 289 N. W. 413):

"* * * A sale of personal property is not a loan or forbearance of money and is not within the usury law unless the sale is a mere form or device to evade the usury law. * * * The increase of the credit price for the purposes of the conditional sales contract does not convert what otherwise would be a sale into a loan. The owner has the right to determine the price at which he will sell his property. He may fix one price for cash and another price for credit. The fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury law does not make the transaction usurious for the very plain reason that the transaction is a sale and not a loan. [Citing cases.] * * *

\* \* \* \* \*

"The power to determine the extent of the increase of the credit over the cash selling price is incident to the owner's right to fix the latter and is a matter of contract between the parties. Courts have observed that in calculating the addition to the cash price the owner may consider all factors which influence vendors, such as profit, return on investment, overhead, handling charges, risks involved, insurance, sale discount of contract for deferred payments, and perhaps other items. [Citing cases.]"

The foregoing decision in the Dunn case we think settled, definitely, in Minnesota that a bona fide installment sale does not come within the purview of the usury statute when in accord with the principles as discussed therein. This court has never held as a matter of law that a sale involving a cash price plus a finance charge equalling a credit price is usurious. Whether the transaction is a bona fide sale or a mere pretense to evade the usury laws is regarded as a question of fact. It has carefully distinguished between the situation involving a cash price plus a finance charge equalling a credit price and one closed wholly at a credit price, no cash price being involved. The Dunn case has been distinguished in Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911, and Midland Loan Finance Co. v. Madsen, 217 Minn. 267, 14 N. W. (2d) 475.[1]

In Lassman v. Jacobson, 125 Minn. 218, 219, 146 N. W. 350, 351, 51 L.R.A. (N.S.) 465, 466, Ann. Cas. 1915C, 774, 775, this court held the test of a usurious contract to be as follows:

"\* \* \* Will its performance result in producing to the lender a greater return for the use of the amount loaned than is allowed by law, and was that result intended?"

In In re Bibbey (D. Minn.) 9 F. (2d) 944, 945, the court stated the following in the course of its decision:

---

[1]See, 10 Minn. L. Rev. 550, 551; 36 Minn. L. Rev. 744 to 756 and cases cited; also, see Annotations, 48 A. L. R. 1442, 57 A. L. R. 880, and 152 A. L. R. 598, with reference to "Advance in price on credit sale as compared with cash sale as usury," and with reference to usury as affecting conditional sale contract.

"In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take, and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; (5) and there must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury. * * *

"It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he may see fit, and such sale, if bona fide, cannot be usurious, however unconscionable it may be. A vendor may well fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties, but not to the courts, barring evidence of bad faith. If the parties have acted in good faith, such a transaction is not a loan, and not usurious."

The court came to the conclusion in the Bibbey case that there is no question but what the seller may name a greater price when he sells upon time than when he sells for cash; that following that course is not an unusual practice and custom in merchandising; that in calculating the amount of addition to the cash price, where the goods are sold upon time, there is necessarily taken into consideration what would be a proper interest charge upon the investment; also taken into account are the chances of loss and failure to pay, the insurance necessary to cover the transaction, and the overhead expense for carrying on a business of that kind, all of which find a place in ascertaining how a merchant may profitably sell upon time and the price to be charged. The conclusion was that this does not make a usurious contract; that it does not make it a loan of money; that the collection of interest under the circumstances is merely a method by which the seller calculates the

amount that he must charge when selling upon time to make a profit; and furthermore that it is quite well known that automobile companies expect to discount their sales contracts as they make them, that companies have been and are being formed for that express purpose, and that the automobile companies, when they have made such a time sale, usually discount their sales contracts, and are paid therefor by the companies the cash price at which the automobile was sold when a cash customer is found. Such a contract is therefore by its plain terms a sale upon time at a conditional or credit price over the cash price. We decline to follow the plaintiff's view and contention that we have before us a usurious contract.[2]

█ Undoubtedly the Motor Vehicle Retail Installment Sales Act was enacted by the 1957 legislature to protect the purchasers of automobiles from the activities of a few individuals who had been guilty of inequitable practices in particular situations. It thereby sought to regulate the credit charge for the purchase of an automobile over a contractually specified period of time. The usury laws did not protect a person purchasing an automobile on a retail installment contract, commonly referred to as a conditional sales contract, inasmuch as the courts had long since come to recognize the right of a merchant to sell at one price for cash and at another price if payments were to be made on an installment basis. Our legislature stated in the title to the foregoing act the

---

[2]It would appear that up to this time some 21 states have enacted motor vehicle installment sales acts presently in effect. Some of the various provisions of the act vary from state to state, but there is much consistency in the provisions which deal with methods of computing rebates. They are:
1. California: Civil Code of California 1949, §§ 2981, 2982.
2. Colorado: Colorado Rev. Stat. 1953, § 13-16-6.
3. Connecticut: G. S. of Conn. 1949, § 6699.
4. Florida: Laws of Florida 1957, c. 57-799.
5. Illinois: Illinois Rev. Stat. 1957, c. 121½, § 223, et seq.
6. Iowa: Iowa Code Ann. § 322.17, et seq.
7. Kentucky: Kentucky Rev. Stat. § 190.090, et seq.
8. Maine: Rev. Stat. of Maine 1954, c. 59, § 249, et seq.
9. Massachusetts: Ann. Laws of Massachusetts, c. 255, § 12.
10. Michigan: Michigan Stat. Ann. 1957, § 23.628(1), et seq.
11. Minnesota: L. 1957, c. 266.
12. Nevada: Nevada Rev. Stat. § 97.010, et seq.

purposes thereof as follows:

"An act defining and regulating certain installment sales of motor vehicles; prescribing the conditions under which such sales may be made and regulating the financing thereof; regulating and licensing persons engaged in the business of financing such sales; prescribing the form, and contents used in connection with such sales and the financing thereof; prescribing certain rights and obligations of buyers, sellers, persons financing such sales and others; limiting incidental charges in connection with such instruments and fixing maximum charges for delinquencies, extensions and time sale differentials; authorizing investigations and examinations of persons engaged in the business of making or financing such sales; prescribing penalties for violations, and providing for enforcement of compliance by injunction."

The purposes of the act as stated in the title indicate a legislative policy to bring both regulatory control and uniformity into the field of automobile financing. Legislative action was brought about by the fact that several states had enacted some form of regulation aimed particularly at automobile installment sales because the bona fide cost of installment credit had actually exceeded the rates generally allowed under usury statutes. Whatever complaints there may be that the legislature has fallen short in any respect of its purpose to protect the general public,

13. New Jersey: N. J. Stat. Ann. § 17:16B-1, et seq.
14. New York: 40 McKinney's Consol. Laws of New York Ann., Personal Property Law, § 301, et seq.
15. North Dakota: North Dakota Rev. Code of 1943 (1957 Supp.) § 51-1301, et seq.
16. Ohio: Baldwin's Ohio Rev. Code Ann. (2 ed.) § 1317.01, et seq.
17. Oregon: Oregon Rev. Stat. § 83.510, et seq.
18. South Dakota: Session Laws of South Dakota 1957, c. 241.
19. Utah: Utah Code Ann. 1953, § 15-1-2, et seq.
    The two states not named above, Indiana and Wisconsin, have provisions that the state commission shall issue regulations setting out the formula for computing rebates. In both instances the state commission has adopted the method included in the Minnesota act and which has been followed in this state since its inception. Burns Indiana Stat. Ann. 1951, § 58-901, et seq.; 1 Indiana Rules & Regs. 1947 (1948 Supp.) p. 154; Wisconsin Stat. 1957, § 218.01; 1 Wis. Adm. Code, Rules of Banking Dept. § 76.01.

the remedy is to seek legislation.

Plaintiff argues that declining balances must be taken into account when computing the time price differential applicable to the regular monthly contract under § 168.72(a), "Class 1," and § 168.72(b), even though the legislature did not refer to declining balances in those provisions but in another section of the act (§ 168.74) provided that declining balances are to be taken into consideration when computing the time price differential applicable to any regular payment contract. It seems clear that when the legislature required that an irregular or unequal installment contract be computed (§ 168.72[c]) "at the effective rate provided in subsection (a)," the legislature thereby disclosed its basic intention that the effective rate for all contracts (i. e., 1 year, more or less than 1 year, irregular or unequal installment contracts) is to be substantially the same.

The plaintiff contends that the word "proportionately" as used in § 168.72(b) means that the time differential is to be calculated on a descending balance which would be recast from year to year during the term of the transaction. Against plaintiff's contention, the defendants propose and argue that the term "proportionately" as used in said subsection refers to the computation of the time price differential by multiplying for example $8 (the maximum provided) per $100 per year by the period of time it will take to liquidate the balance on the automobile. Defendants further contend that the same method of computation applies whether the contract is for a period of 1 year, less than 1 year, or greater than 1 year. We think the contentions of defendants coincide with the intention the legislature had in mind both when the act was proposed and when enacted and that having provided for those situations where computations are to be made on descending balances they have left no ambiguity as to the purpose and the application of § 168.72(a), "Class 1," and § 168.72(b), which includes the provision that "the time price differential shall be computed proportionately."

It will be noted that a class 1 transaction under § 168.72(a, b) of the Motor Vehicle Retail Installment Sales Act for 1 year (the differential being $8 per $100 per year) is equivalent to an effective rate of 14.45 percent per year; that a class 1 transaction for 2 years computed proportionately by doubling the price differential for 1 year is equivalent to an

effective rate of 14.67 percent per year; and that a class 1 transaction for 3 years computed proportionately by tripling the time price differential, for 1 year, is equivalent to an effective rate of 14.54 percent per year. The yields as stated aforesaid are all approximate in that they may be carried out to many more decimal places. It will be seen, therefore, that except for the small deviations of less than .3 of 1 percent caused by mathematical aberrations, the effective rate on a 1-, 2-, or 3-year contract remains the same whenever the time price differential is computed proportionately.

It is to be further noted that the plaintiff has in fact conceded that the legislature's method of computing the maximum differential on a 1-year contract produces an effective rate of 14.45 percent. In fact applying the method of computation adopted administratively in this state since the adoption of the 1957 act, we also find that the effective rate remains constant over every contract length with minor variations.

The plaintiff insists that a contract for a period greater than 1 year must be computed on the descending balances, only. We think it clear that the legislature was fully aware of the descending-balance method of computation and the appropriate phraseology for expressing it when drafting the 1957 act. Undoubtedly, if the legislature intended that method to be applied to the situation here involved, they would have used the term of art "descending balance" as applied to the class 1 provision and not the term "proportionately."[3]

It is well known that the object of all interpretation of laws is to ascertain and effectuate the intent of the legislature. § 645.16. We apply the fundamental rule of statutory construction that a statute is to be read and construed as a whole so as to harmonize and give effect to all

---

[3]The legislature has stated when computation shall be made based on descending balances in M. S. A. 168.74, which reads as follows:

"The holder of a retail installment contract, may, upon agreement with the retail buyer, extend the schedules due date, or defer the schedules payment of all or part of any installment payment or payments, or renew the balance of such contract. In any such case the holder may restate the amount of the installments and the time schedule therefor, and collect as a refinance charge for such extension, deferment or renewal, a flat service fee not to exceed $5 and a total additional charge not exceeding an amount equal to one percent *per month simple interest* on the respective *descending*

its parts. Moreover, various provisions of the same statute must be interpreted in the light of each other, and the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain. See, §§ 645.08 and 645.17(2); Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62; City of St. Louis Park v. King, 246 Minn. 422, 75 N. W. (2d) 487; Gale v. Commr. of Taxation, 228 Minn. 345, 37 N. W. (2d) 711; Paul v. Faricy, 228 Minn. 264, 37 N. W. (2d) 427; Governmental Research Bureau, Inc. v. Borgen, 224 Minn. 313, 28 N. W. (2d) 760; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; Volk v. Paramount Pictures (D. Minn.) 91 F. Supp. 902. We are bound to conclude that the method of computation advanced by plaintiff, as applicable to the contract in question, is inconsistent with and contradictory to the legislative intent as expressed in the 1957 act and that the proper method of computing the maximum time price differential under § 168.72(a, b), class 1, is according to the proportion (ratio) between the period of the contract under computation and 1 year.

The record indicates that the banking department of this state has understood the 1957 act as herein interpreted since its inception and likewise that the entire automobile industry has so understood the provisions of the act. It might be well to further point out that there is nothing unusual or unique about this method of computing charges on an installment contract since this is the method of computation permitted by § 48.153 for computing charges to be made by banks on installment loans. The legislature has made it clear in what particular situations the descending balance method of computation shall be

*balances* computed from the date of such extension, deferment or renewal." (Italics supplied.)

It is clear that this provision would have served no useful purpose if the legislature had not intended that, in general and otherwise, time price differentials under the act should be computed without consideration being given to the descending balances. It must be equally clear that this specific provision which provides for computation based on descending balances in the case of refinance contracts indicates that descending balances are not to be considered in computing time price differentials on contracts that are not being refinanced.

used. It has made it equally clear by § 168.72(a, b) under what circumstances the time price differential shall be computed proportionately when applied to class 1 motor vehicles.

The trial court properly granted defendants' motion to dismiss. The plaintiff has failed to establish any grounds entitling him to the relief prayed for.

Affirmed.