# THOMAS RUONA v. FREEWAY DODGE, INC., AND ANOTHER.

171 N. W. (2d) 212.

September 26, 1969—No. 41428.

*Donald H. Seel, Dorsey, Marquart, Windhorst, West & Halladay, William A. Whitlock,* and *Charles J. Hauenstein,* for appellants.

*R. Gordon Nesvig,* for respondent.

*Mackall, Crounse, Moore, Helmey & Holmes, Clay R. Moore,* and *Roger V. Stageberg,* for Community Credit Co., amicus curiae.

*Faegre & Benson* and *James A. Halls,* for Northwestern National Bank of Minneapolis, amicus curiae.

*Dean F. Scott,* for Minnesota Bankers Assn., amicus curiae.

*Clarence O. Holten* and *James S. Eriksson,* for Minnesota Automobile Dealers Assn., amicus curiae.

24

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Appeal by defendants from an order denying their alternative motion for amended findings or a new trial.

On November 5, 1965, the plaintiff, Thomas Ruona, purchased a used 1963 Ford Thunderbird automobile from defendant Freeway Dodge, Inc. The cash selling price was $2,900. To this price, the seller added $186.99, which represented the difference between the amount plaintiff still owed on the 1962 M. G. which he traded in as part of the purchase and its market value. This made the total cash price $3,086.99. Since plaintiff was unable to pay cash, he signed a conditional sales contract, which at his request was payable in thirty-five $80 monthly payments. The seller then added finance charges in the form of a "time price differential" of $1,240.85 to the unpaid balance. This made the total credit price $4,327.84. Since thirty-five $80 monthly payments would total only $2,800, a substantially larger final installment of $1,527.84 was required to retire the contract. In the finance industry, such contracts are referred to as "balloon contracts." The contract was subsequently assigned to defendant The Murphy Plan, Inc., a licensed finance company.

Plaintiff brought suit against both defendants in Hennepin County Municipal Court, alleging among other things that they had intentionally charged him a time price differential in excess of the maximum permitted by the Minnesota Motor Vehicle Retail Installment Sales Act enacted in 1957. Minn. St. 168.66 to 168.77. After trial, the court initially made findings favorable to the defendants. However, upon plaintiff's motion, the court amended its findings and held that defendants had deliberately charged plaintiff a time price differential in excess of the amount permitted by § 168.72. The court awarded plaintiff

$2,476.86 in damages plus $500 as reasonable attorney's fees, costs, and disbursments.[1] Defendants' appeal followed.

The sole issue raised on this appeal is whether the defendants added to the cash price of an automobile a finance charge in the form of a time price differential which exceeds the maximum permitted under the Minnesota Motor Vehicle Retail Installment Sales Act. No claim is, or could be, made that the finance charges as fixed by the contract were usurious in violation of § 334.01, because the transaction is a sale on credit and not a loan. Van Asperen v. Darling Olds, Inc. 254 Minn. 62, 93 N. W. (2d) 690.

Section 168.72 provides in part:

"(a)  The time price differential authorized by sections 168.66 to 168.77 in a retail installment sale shall not exceed the following rates:

"Class 1.  Any motor vehicle designated by the manufacturer by a year model of the same or not more than one year prior to the year in which the sale is made—$8 per $100 per year.

"Class 2.  Any motor vehicle designated by the manufacturer by a year model of two or three years prior to the year in which the sale is made—$11 per $100 per year.

"Class 3.  Any motor vehicle not in Class 1 or Class 2—$13 per $100 per year plus a flat charge of $3 for each such retail installment sale.

"(b) Such time price differential shall be computed on the principal balance as determined under section 168.71(b) and

---

[1] Minn. St. 168.75(b) provides: "In case of an intentional failure to comply with any provision of sections 168.66 to 168.77, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees." The trial court allowed as damages the contract price of $4,327.84 but permitted defendants to set off against this amount $1,850.98, which represented the amount necessary to pay off the contract had the time price differential been computed as plaintiff claimed the statute required.

shall be computed at the rate indicated on contracts payable in successive monthly installment payments substantially equal in amount extending for a period of one year. On contracts providing for installment payments extending for a period less than or greater than one year, the time price differential shall be computed proportionately.

"(c)   When a retail installment contract provides for unequal or irregular installment payments, the time price differential shall be at the effective rate provided in subsection (a) hereof, having due regard for the irregular schedule of payment."

It is undisputed that the vehicle purchased by plaintiff falls within "Class 2" as defined by subsection (a) so that the applicable rate for computing the time price differential is $11 per $100 per year. It is also clear that under § 168.72(b) the maximum time price differential on plaintiff's contract must "be computed proportionately," since it extends for more than one year and that, under § 168.72(c), it must be computed at the "*effective-rate* provided in subsection (a)" since it cannot be disputed that the contract calls for unequal installment payments. (Italics supplied.) Nevertheless, plaintiff contends that the maximum time price differential authorized by the act on his contract is simply the cash price ($3,086.99) X the rate ($11/$100 per year) X the time in years (3) or $1,018.71 and that any larger time price differential would violate both public policy and the purposes of the act. If this were true, the time price differential of $1,240.85, called for by the contract, would be, as the trial court found, excessive. On the other hand, defendants contend that § 168.72(c) permits them to charge a time price differential in an amount calculated to produce the same rate of return to them on the amount of credit extended as would have resulted had the contract been payable in equal monthly installments. Computed in this manner, defendants contend that the maximum time price differential on plaintiff's contract is

$1,442.74[2] and therefore, that the finance charge made was not excessive.

[2] As computed by amici curiae at what they contend as the maximum effective rate in percentage terms, the repayment schedule is as follows:

"Effective Rate $\qquad$ 19.57%

"Effective Monthly Rate $\qquad$ $\dfrac{19.57}{12} = 1.631\%$

| "Month | "(A) "Cash Principal of Which Purchaser Has Use for Month | (B) Effective Monthly Rate | (C) Monthly Contract Payment | (D) Time Price Differential Paid Monthly | (E) Monthly Amounts Used to Reduce Principal |
|---|---|---|---|---|---|
| "1 | $3,086.99 | 1.631% | $80.00 | $50.34 | $29.66 |
| 2 | 3,057.33 | 1.631 | 80.00 | 49.86 | 30.14 |
| 3 | 3,027.19 | 1.631 | 80.00 | 49.36 | 30.64 |
| 4 | 2,996.55 | 1.631 | 80.00 | 48.86 | 31.14 |
| 5 | 2,965.41 | 1.631 | 80.00 | 48.36 | 31.64 |
| 6 | 2,933.77 | 1.631 | 80.00 | 47.84 | 32.16 |
| 7 | 2,901.61 | 1.631 | 80.00 | 47.32 | 32.68 |
| 8 | 2,868.93 | 1.631 | 80.00 | 46.78 | 33.22 |
| 9 | 2,835.71 | 1.631 | 80.00 | 46.24 | 33.76 |
| 10 | 2,801.95 | 1.631 | 80.00 | 45.69 | 34.31 |
| 11 | 2,767.64 | 1.631 | 80.00 | 45.13 | 34.87 |
| 12 | 2,732.77 | 1.631 | 80.00 | 44.56 | 35.44 |
| 13 | 2,697.33 | 1.631 | 80.00 | 43.98 | 36.02 |
| 14 | 2,661.31 | 1.631 | 80.00 | 43.40 | 36.60 |
| 15 | 2,624.71 | 1.631 | 80.00 | 42.80 | 37.20 |
| 16 | 2,587.51 | 1.631 | 80.00 | 42.20 | 37.80 |
| 17 | 2,549.71 | 1.631 | 80.00 | 41.58 | 38.42 |
| 18 | 2,511.29 | 1.631 | 80.00 | 40.95 | 39.05 |
| 19 | 2,472.24 | 1.631 | 80.00 | 40.31 | 39.69 |
| 20 | 2,432.55 | 1.631 | 80.00 | 39.67 | 40.33 |
| 21 | 2,392.22 | 1.631 | 80.00 | 39.01 | 40.99 |
| 22 | 2,351.23 | 1.631 | 80.00 | 38.34 | 41.66 |
| 23 | 2,309.57 | 1.631 | 80.00 | 37.66 | 42.34 |
| 24 | 2,267.23 | 1.631 | 80.00 | 36.97 | 43.03 |

Because of the large number of automobile installment sale contracts outstanding and because of the substantial penalties provided by the act, not only for willful,[3] but also for innocent violations of the act,[4] our interpretation of the effect of § 168.72 (c) has, as the appearance of the consumer finance industry as amici curiae indicates, significance beyond merely determining the rights of the parties in this case. While a number of states have enacted provisions similar or identical to § 168.72(c)[5] we have not been referred to or been able to find a case involving a contract providing for unequal payments in which a court has interpreted any of the provisions.

| | | | | | |
|---|---|---|---|---|---|
| 25 | 2,224.20 | 1.631 | 80.00 | 36.27 | 43.73 |
| 26 | 2,180.47 | 1.631 | 80.00 | 35.56 | 44.44 |
| 27 | 2,136.03 | 1.631 | 80.00 | 34.83 | 45.17 |
| 28 | 2,090.86 | 1.631 | 80.00 | 34.10 | 45.90 |
| 29 | 2,044.96 | 1.631 | 80.00 | 33.35 | 46.65 |
| 30 | 1,998.31 | 1.631 | 80.00 | 32.59 | 47.41 |
| 31 | 1,950.90 | 1.631 | 80.00 | 31.81 | 48.19 |
| 32 | 1,902.71 | 1.631 | 80.00 | 31.03 | 48.97 |
| 33 | 1,853.74 | 1.631 | 80.00 | 30.23 | 49.77 |
| 34 | 1,803.97 | 1.631 | 80.00 | 29.42 | 50.58 |
| 35 | 1,753.39 | 1.631 | 80.00 | 28.59 | 51.41 |
| 36 | 1,701.98 | 1.631 | 1,729.73 [Balloon] | 27.75 | 1,701.98 |
| "TOTAL | $88,474.27 | | $2,800.00 [less Balloon] | $1,442.74 | $3,086.99" |

[3] See footnote 1, *supra*.

[4] Section 168.75 (c) provides: "In case of a failure to comply with any provision of sections 168.66 to 168.77, other than a wilful failure, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages equal to two times the time price differential, plus reasonable attorneys' fees."

[5] E. g., 5 Del. Code Ann. § 2907 (c). Iowa Code Ann. § 322.19 (3); Kentucky Rev. Stat. § 190.110(3); 40 McKinney's Consol. Laws of New York Ann., Personal Property Law, § 303(3); North Dakota Century Code Ann. § 51-13-03 (3); Oregon Rev. Stat. § 83.560 (3). See, generally, Curran, Trends in Consumer Credit Legislation, pp. 254 to 277.

However plaintiff may view them, the time price differential rates set forth in § 168.72 (a) are intended by the legislature to establish the maximum finance charges for extending consumer credit on the sale of automobiles and are specifically intended not only to protect the purchasers of automobiles on installment contracts, but also to "bring both regulatory control and uniformity into the field of automobile financing." Van Asperen v. Darling Olds, Inc. 254 Minn. 62, 71, 93 N. W. (2d) 690, 697. The consumer finance industry strongly supported the passage of this act because those engaged directly in extending consumer credit and those who purchase the majority of motor vehicle installment contracts are permitted under it to charge a rate which presumably allows them a profitable return on high risk sales without running afoul of the usury laws and also because the act's regulatory provisions were designed to rid the industry of fly-by-night operators.[6] For reasons not disclosed in the act or by the legislative history, the legislature did not choose to express the maximum authorized finance charges in terms of an "annual percentage rate" or an "effective interest rate," both of which are terms known and regularly used in the finance industry[7] to express the relative cost of credit in percentage terms so as to clearly reveal to installment sellers and finance companies the real earning power of the funds they invest, and both of which could more meaningfully disclose to the consumer exactly what he is paying for installment credit and enable him to decide whether to purchase on the seller's terms or borrow elsewhere and buy for cash. The legislature, however, chose to express the maximum authorized finance charges in terms of a ratio of dollars per hundred dollars per year. This is commonly known in the finance industry as an "add-on" rate, by the use of which the maximum finance charge which may be added onto the cash sale price to determine the credit price is computed on the original

---

[6] Comment, 44 Minn. L. Rev. 167, 172.

[7] See, Neifeld, Guide to Installment Computations, p. 60.

cash balance of an installment obligation without regard to the declining balance as monthly payments are made by the buyer.

While this dollar ratio, add-on method arguably is not the best one for disclosing to the consumer the actual cost to him of consumer credit, § 168.71 (b) (6) does require that the seller compute the time price differential charged in advance and expressly state it on the face of the contract. It should be noted that after July 1, 1969, in addition to these requirements of the act, sellers will be required by Federal Reserve Regulation Z, § 226.8 (b) (2), 34 Fed. Reg. 2008, promulgated pursuant to the Federal Consumer Credit Protection Act, 82 Stat. 146, 15 USCA § 1601 ff. to disclose in writing on the installment sale contract the "finance charge expressed as an annual percentage rate."

The purpose and design of the Federal act and the implementing regulation is to avoid the uninformed use of consumer credit by informing the installment buyer of the cost of the credit extended to him in such a manner that he will know at a glance what he is paying for his credit and can compare the seller's finance charges with other credit sources. The regulation adopts as the means for expressing the unit cost of credit the "annual percentage rate" recognizing that the true annual interest rate equivalent stands out as the most reliable yardstick for measuring one seller's finance charge against those offered by all other sellers or credit sources.

In Van Asperen v. Darling Olds, Inc. *supra,* we pointed out by way of dicta that, even though our legislature adopted the dollar ratio, add-on method of computing the maximum time price differential, the actual yield to the seller (cost to the buyer) of an automobile installment sale contract can be calculated mathematically and expressed in terms of an annual percentage charge or simple interest rate equivalent. Thus, the dollar ratio, add-on rate of $8/$100 per year specified for the Class 1 vehicle involved in Van Asperen is equivalent to an annual percentage rate, computed by the actuarial method, of approximately 14.5 percent. We cannot escape the conclusion that it is this figure,

as defendants contend, which the legislature referred to in § 168.72 (c) as the "effective rate." Any other interpretation would render the effect of § 168.72(c) virtually meaningless and would ignore the purpose and effect of all the subsections of § 168.72 when read as a whole. The yardstick for computing the finance charges specified in § 168.72 (a) is, as required by § 168.72(b), an equal monthly payment contract extending for a period of one year, and when applied to a contract extending beyond one year and calling for other than equal monthly payments, the rate must be computed proportionately and at a rate which will produce no greater yield to the seller than he would receive if the contract were one calling for equal monthly payments. This "effective rate" is much greater than the dollar ratio, add-on rate because the add-on rate is applied to the principal balance without regard to the fact that the buyer will periodically pay a part of the balance due so that he will not have the use of the full amount of the credit for the entire term of his obligation.

The add-on rate of $11/$100 per year which is applicable in this case results in a maximum time-price differential of $1,018.71 so long as the monthly installments are regular and equal in amount. This is equivalent to an annual percentage rate or "effective rate" of 19.57 percent. However, where, as here, over 35 percent of the total credit price is not paid until the final installment, 3 years after the sale, the buyer has the use of a larger part of the credit for a longer period than where the payments are regular and equal. Thus, a time price differential of $1,018.71 on this contract would provide a yield to the seller which is substantially less than 19.57 percent. Therefore, it appears inescapable, as defendants contend, that the maximum time price differential on an installment sale contract which calls for a large balloon payment at the end may be substantially higher to yield the same "effective rate" (19.57 percent) authorized by § 168.72(c).

This interpretation, in our opinion, is consistent not only with the express terms of the act, but also with its basic purposes of

consumer protection and of stabilization of the finance industry. While the "effective rate" of 19.57 percent permitted on plaintiff's contract seems quite high, it is for the legislature and not for this court to strike the balance between protecting the consumer and permitting legitimate finance companies to earn a profitable return on high risk used-car installment sale contracts.[8] We hold, therefore, that the trial court erred in finding that the time price differential charged plaintiff on his installment contract exceeded the maximum permitted by § 168.72.

Reversed.

---

[8] It may be noted that during legislative consideration of the act, the time price differential rates proposed in the bill as introduced were increased by $1, from $7, $10, and $12 to $8, $11, and $13. Journal of the Senate, 1957, p. 735.