JOHN M. O'BRIEN v. PHILLIPS MOTORS EXCELSIOR, INC., AND ANOTHER.

179 N. W. (2d) 158.

August 7, 1970—No. 42150.

*O'Connor, Green, Thomas, Walters & Kelly, Joe A. Walters, Charles B. Faegre,* and *John F. Casey,* for appellant.

*Lind, Olson & McCabe, Rodney J. Olson,* and *David K. Hackley,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

The question for decision is the constitutionality of that part of the Motor Vehicle Retail Installment Sales Act, Minn. St. 168.66 to 168.77, which imposes liquidated damages, plus reasonable attorneys' fees, upon a retail automobile seller for his nonwillful failure to furnish the retail buyer with a copy of his retail installment contract at the time of its execution.

The title of the Motor Vehicle Retail Installment Sales Act (L. 1957, c. 266),[1] as we observed in Van Asperen v. Darling Olds, Inc. 254 Minn. 62, 70, 71, 93 N. W. (2d) 690, 696, 697, reflects a legislative policy "to bring both regulatory control and conformity into the field of automobile financing" and "to protect the purchasers of automobiles from the activities of a few individuals who had been guilty of inequitable practices in particular situations." We observe again, as we did in Ruona v. Freeway Dodge, Inc. 285 Minn. 23, 29, 171 N. W. (2d) 212, 216, that the consumer finance industry was instrumental in the enactment of this statute, in part "because those engaged directly in extending consumer credit and those who purchase the majority of motor vehicle installment contracts are permitted under it to charge a rate which presumably allows them a profitable return

---

[1] "An act defining and regulating certain installment sales of motor vehicles; prescribing the conditions under which such sales may be made and regulating the financing thereof; regulating and licensing persons engaged in the business of financing such sales; prescribing the form, and contents used in connection with such sales and the financing thereof; prescribing certain rights and obligations of buyers, sellers, persons financing such sales and others; limiting incidental charges in connection with such instruments and fixing maximum charges for delinquencies, extensions and time sale differentials; authorizing investigations and examinations of persons engaged in the business of making or financing such sales; prescribing penalties for violations, and providing for enforcement of compliance by injunction."

on high risk sales without running afoul of the usury laws."

The legislative purpose is achieved, in part, by the regulatory requirement of Minn. St. 168.71(a)(1):

"Every retail installment contract shall be in writing, shall contain all the agreements of the parties, shall be signed by the retail buyer and seller, *and a copy thereof shall be furnished to such retail buyer at the time of the execution of the contract.*" (Italics supplied.)

The plain purpose of the provision is to inform the installment buyer of the cost of the credit extended to him, even though it falls short of expressing that cost in terms of a more understandable annual percentage rate.

Enforcement of that particular requirement is achieved by civil remedies provided in § 168.75, which provides in part:

"(b) In case of an *intentional failure* to comply with any provision of sections 168.66 to 168.77, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees.

"(c) In case of a failure to comply with any provision of sections 168.66 to 168.77, *other than a wilful failure,* the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as *liquidated damages equal to two times the time price differential, plus reasonable attorneys' fees.*" (Italics supplied.)

It is § 168.75(c) which is here challenged.

The facts out of which the constitutional issue arises are undisputed. Plaintiff ordered an automobile from defendant Phillips Motors Excelsior, Inc. (hereafter defendant) for a cash price of $3,720.83. Because plaintiff was a poor credit and insurance risk, defendant arranged financing with Industrial Credit

Company (hereafter ICC).[2] A conditional sales contract, prepared by ICC for defendant, reflected an unpaid balance of $2,820, to which was added automobile and life insurance premiums totaling $280.56, *and a time price differential of $651.36,* making a time balance of $3,751.92, payable in 36 monthly installments. An invoice prepared by defendant reflected a cash price of $3,720.83 less $900.83 for used-car trade-in, leaving a cash amount due on delivery of $2,820. Defendant assigned the executed conditional sales contract to ICC in consideration of $2,820.

Defendant failed to furnish plaintiff with a buyer's copy of the retail installment contract at the time of its execution (but did so approximately 7 months later when it was called to its attention by the attorney for plaintiff). Defendant's failure to comply with the statute, as the trial court expressly found, was "merely an oversight and not intentional" and, as the court further found, "[n]o prejudice to plaintiff was shown as a result of such failure."

The Honorable Rolf Fosseen, Chief Judge of the Hennepin County District Court, granted judgment for plaintiff in the amount of $1,302.72 (double the time price differential of $651.36) as liquidated damages, with interest, plus $350 as reasonable attorneys' fees.

Defendant contends that Minn. St. 168.75(c) was not intended to authorize a penalty of liquidated damages, plus attorneys' fees, for the retail seller's unintentional failure to furnish his buyer with a copy of the retail installment sales contract, absent proof of prejudice or damage to the buyer, and that the imposition of so severe a penalty for a "totally innocent act" is so shockingly unreasonable and unfair as to deprive it of property without due process of law (Minn. Const. art. 1, § 7, and U. S. Const. Amend. XIV, § 1).

---

[2] ICC, too, was a defendant below but for reasons not important to this decision judgment was entered in favor of ICC.

■ The statute, we hold, is unambiguous in its expression of legislative intent. Minn. St. 168.75(b) clearly refers to intentional failure to comply, with severe penalties for such violation, whereas § 168.75(c) just as clearly provides for nonintentional violations, but with substantially lesser penalties. Prejudice to the automobile buyer in being denied the written disclosure of his finance costs is presumed, and such prejudice is not affected by the motivation of the seller. Judge Fosseen expressed the obvious legislative intent in these words:

"Only a law providing for penalties in failure to furnish the buyer of an automobile with a copy of the installment contract would compel compliance. To require a showing of wilfullness or damages in order to authorize a recovery would invite noncompliance on the part of the seller. Many automobile dealers would consider it a good business risk to withhold the contract, rendering the act ineffectual."

■ The statute, we hold, does not violate either the Constitution of Minnesota or the Constitution of the United States. It is well settled that penalties, including attorneys' fees, imposed by statute must be moderate and reasonably sufficient to accomplish a proper legislative purpose and that the imposition of penalties or conditions that are plainly arbitrary and oppressive violate due process. Chicago & N. W. Ry. Co. v. Nye Schneider Fowler Co. 260 U. S. 35, 44, 43 S. Ct. 55, 59, 67 L. ed. 115, 123. It is equally well settled, however, that the states possess "a wide latitude of discretion" in prescribing penalties for violation of their laws. St. Louis I. M. & S. Ry. Co. v. Williams, 251 U. S. 63, 66, 40 S. Ct. 71, 73, 64 L. ed. 139, 141.

The public interest in compelling undeviating compliance with the simple act of giving the automobile buyer a copy of his retail installment contract, as a matter of consumer protection, is manifest. The reasonableness of the method for achieving that purpose is supported by decision of this court and the United States Supreme Court. In State v. Shevlin-Carpenter Co. 99 Minn. 158,

108 N. W. 935, we sustained the validity of L. 1895, c. 163, § 7, which provided:

"If any person * * * without a valid and existing permit therefor, cuts or employs, or induces any other person * * * to cut * * * timber * * * on state lands, * * * or carries away * * * such timber * * * , he shall be liable to the state in treble damages, if such trespass is adjudged to have been willful; but double damages only in case the trespass is adjudged to have been casual and involuntary."

Defendant there contended that imposing a penalty for the casual or involuntary trespass was a denial of due process (Minn. Const. art. 1, § 7), as well as offensive to natural justice. Our court, in holding otherwise, quoted with approval from Clark and Marshall, Law of Crimes, p. 103 (99 Minn. 165, 108 N. W. 937):

"Public policy may require the legislature, in prohibiting and punishing particular acts under certain circumstances, to provide expressly or impliedly, that any person who shall do the act shall do it at his peril, and that he shall not be allowed to escape punishment by showing that he acted in good faith, without negligence, and in ignorance of the existence of the circumstances rendering the act unlawful. If the language and subject-matter of the statute show clearly that this is the intention of the legislature, the courts must give it effect, however harshly the statute may seem to operate in the particular instance."

St. Louis I. M. & S. Ry. Co. v. Williams, *supra,* sustained the imposition of a $75 penalty, plus a reasonable attorney's fee, pursuant to state statute, against a railroad which demanded and collected 66 cents more than the prescribed rate for intrastate transportation of passengers. The court in that case said (251 U. S. 66, 40 S. Ct. 73, 64 L. ed. 140):

"* * * '[T]he power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced,

whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion.' Nor does giving the penalty to the aggrieved passenger require that it be confined or proportioned to his loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state.

\* \* \* \* \*

"When the penalty is contrasted with the overcharge possible in any instance it of course seems large, but, as we have said, its validity is not to be tested in that way. When it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates, we think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." [3]

---

[3] The United States Supreme Court had earlier, in Missouri P. Ry. Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 57 L. ed. 1507, invalidated a statutory penalty of $500 where a railroad had made a freight overcharge of $3.02. The difference in the result, however, did not turn upon the dimension or disproportion of the penalty. The result in Tucker was based, rather, on the fact that, without violating the statute, the railroad had no opportunity for securing a judicial determination of the validity of the allegedly confiscatory rate schedule. Mr. Justice Van Devanter, it is interesting to note, was the author of both the Tucker and Williams opinions. St. Louis I. M. & S. Ry. Co. v. Wynne, 224 U. S. 354, 32 S. Ct. 493, 56 L. ed. 799, is similarly distinguishable. Double damages and attorneys' fees were there assessed, pursuant to a state statute, because the defendant railroad failed to pay a claim of a livestock owner within 30 days after notice, even though after trial it was established that the refused claim was extravagant. The statute, thus applied, was held to violate due process in penalizing the railroad's exercise of its lawful right judicially to contest such claim. However, the statute, as applied in a situation where the plaintiff demanded no more than he asked for and successfully recovered, was upheld in Kansas City S. R. Co. v. Anderson, 233 U. S. 325, 34 S. Ct. 599, 58 L. ed. 983.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.