OPINION OF THE COURT
William H. Bristol, J.
Defendant Mayo moves for summary judgment on her fourth, fifth and sixth affirmative defenses and counterclaims, which allege violations of the Truth in Lending Act (US Code, tit 15, § 1601 et seq.), regulation Z (12 CFR part 226) and the Motor Vehicle Retail Instalment Sales Act (Personal Property Law, § 301 et seq.). Plaintiff, Chemical Bank, cross-moves for summary judgment in its favor on plaintiff’s same fourth, fifth and sixth affirmative defenses and counterclaims. Third-party defendant, Scutti Pontiac, joins in plaintiff’s motion.
*782 On December 16, 1977, Loria Mayo bought a car from Scutti Pontiac and financed it via a retail installment contract prepared by Scutti Pontiac. Scutti subsequently assigned this contract to Chemical Bank. Scutti made certain disclosures, required by the Truth in Lending Act and regulation Z, on the face of the agreement. Among them was the following item listed under “other charges”: “Reg., Doc. Fees ... $16.50”. Defendant’s fourth affirmative defense and counterclaim alleges that Scutti violated the Truth in Lending Act and regulation Z[1] by lumping registration and documentary fees together and, then, disclosing them as a single item.
Congress stated that it is the purpose of the Truth in Lending Act “to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit” (US Code, tit 15, § 1601, subd [a]; emphasis added). Among the information Congress required to be disclosed to the consumer are the cash price of the property or service purchased (US Code, tit 15, § 1638, subd [a], par [1]), all other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge (subd [a], par [4]) and the finance charge (subd [a], par [6]).
Registration fees are imposed by statute for the privilege of operating a motor vehicle upon the public highways of this State. (Vehicle and Traffic Law, § 401, subds 1, 6.) However, for the purpose of compliance with the truth in lending provisions, registration fees are part of the finance charge; they can be excluded from the computation of the finance charge only if they are separately itemized. (12 CFR 226.4 [b] [4]; US Code, tit 15, § 1605, subd [d], par [4].)
Documentary fees, on the other hand, are fees paid to the vendor for preparing the car’s registration and other documents. (Opns of Fed Reserve Bd No. 330, May 21, 1970.) Documentary fees are not imposed by law. Rather, they are imposed by the dealer, and are not, therefore, the type of charge or fee to which 12 CFR 226.4 (b) (4) applies. Consequently, documentary fees must be included in the cash *783 price (see 12 CFR 226.2 [n]), or, if financed, separately itemized pursuant to section 1638 (subd [a], par [4]) of title 15 of the United States Code and 12 CFR 226.8 (c) (4). (See, also, Opns of Fed Reserve Bd No. 623, Aug. 9, 1972.)
In this case, since registration fees were not included in the finance charge, they were properly excluded from it. Likewise, the documentary fees were properly excluded from the cash price. The problem arose when both excluded fees were lumped together as an “other charge” and disclosed as one item.
The parties have not cited, nor has the court’s independent search uncovered, any cases directly in point.
In a case similar to this case, the Tenth Circuit held that license, title and registration fees excluded from the finance charge pursuant to 12 CFR 226.4 (b) (4) constituted a single item, and, therefore, each charge need not be individually itemized and disclosed. (Downey v WhaleyLamb Ford Sales, 607 F2d 1093,1096.) That case, however, is distinguishable from the case at bar. Here we are concerned with the aggregation of registration fees with documentary fees, the last of which is of a “type”[2] different from “[License, certificate of title and registration fees imposed by law” to which 12 CFR 226.4 (b) (4) applies. In other words, Downey establishes that fees of the type covered by 12 CFR 226.4 (b) (4) need not be broken down into their component parts. Downey does not stand for the proposition that fees of different “types” may be aggregated for disclosure.
Such interpretation is buttressed by the decision in Cenance v Bohn Ford (430 F Supp 1064). In that case a chattel mortgage registration fee was included in! the amount disclosed under “license, title and registration fees”. The court there held that such inclusion violated regulation Z; the court noted (p 1067) that the regulations distinguished “the two types of charges for Truth in Lending purposes”. (Compare 12 CFR 226.4 [b] [1], [4].)
This court, therefore, concludes that documentary fees and registration fees are fees of two different types which should not have been aggregated and disclosed as a single *784 item. The court must next determine whether Scutti Pontiac’s failure to separately itemize the documentary and registration fees constitutes a violation of the Truth in Lending Act and the regulations thereunder.
Some courts that have analyzed this problem have required strict compliance with the disclosure requirements and have awarded the statutory penalty (US Code, tit 15, § 1640, subd [a], par [2], cl [A], subd [i]) for minute deviations from the disclosure rules. (See Grant v Imperial Motors, 539 F2d 506.) Such courts have reasoned that the Truth in Lending Act is a remedial statute that must be strictly construed against lenders (see McGowan v King, Inc., 569 F2d 845, 848); that the statute vests considerable enforcement powers in consumers as private Attorneys General and entitles them to penalties and attorney’s fees. (See Aldrich v Upstate Auto Wholesale, 564 F Supp 390 [NDNY].)
Other courts have not found a violation of the Truth in Lending Act where the disclosure documents as a whole substantially complied with the disclosure rules. (See Shroder v Suburban Coastal Corp., 550 F Supp 377.) In Shroder, the court stated (p 382): “ ‘Strict compliance,’ * * * ‘does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still substantial, clear disclosure of the fact or information demanded’ by the act. [Citations omitted.] Applying an objective standard, • the * * * judge should examine the provisions of the disclosure statement in the context of the specific documents and instrument reflecting the particular transaction in the case before the court, and, not reading one sentence or one line of the disclosure statement in isolation, determine whether there has been clear, substantial and accurate disclosure as required by the Act. [Citations omitted.]”
Still other courts have looked to the underlying purpose of the act, namely, to assure the meaningful disclosure of credit terms, and have held that where technical violations of the disclosure regulations have not undermined the Congressional policy expressed in the act no actionable violation is to be found. (See Jumbo v Nester Motors, 428 F Supp 1085, 1087.)
*785 This court is persuaded the more reasonable view is that a violation of the Truth in Lending Act should be found only when, taken as a whole, the disclosure document substantially fails to adhere to the disclosure requirements, so as to impair the stated purpose of the act, viz., to assure meaningful disclosure of credit terms. In other words, creditors must substantially comply with the rules that govern the form and content of the disclosure document. However, if the disclosure rules are substantially followed, then no liability should attach to a minor deviation which does not impair meaningful disclosure of credit terms. This is especially true in a case like the one at bar, where the applicable statutory and regulatory provisions are unclear.
Although not controlling in this case, the act and accompanying regulations as amended in 1980, effective October 1, 1982, are instructive. Under the new rules, license, title and registration fees may no longer be included in the cash price, as is the case with documentary fees incidental to the sale. (12 CFR 226.2 [a] [9].) Furthermore, if documentary fees and license, title and registration fees are financed, they must be included in the computation of the amount financed. The itemized computation, however, need not be disclosed, unless the debtor requests that the fees be so itemized and disclosed. (US Code, tit 15, § 1638, subd [a], par [2]; 12 CFR 226.18.)
A review of the installment contract here in issue reveals that Scutti Pontiac made detailed, substantial, and meaningful disclosure of the transaction’s credit terms. Scutti Pontiac’s failure to separately itemize the registration and documentary fees is at most a de minimis deviation from the requirements of a complex set of statutes and regulations meant to protect consumers, not to ensnare even the prudent creditor in a maze of technical pitfalls. (See George v General Fin. Corp., 414 F Supp 33.)
Having found no actionable violation of the Truth in Lending Act, defendant’s fifth affirmative defense and counterclaim based on alleged violation of section 302 (subd 5, par [1]) of the Personal Property Law is left without foundation. Nevertheless, even if a truth in lending violation had been found upon which to predicate a *786 section 302 (subd 5, par [1]) violation, subdivision 2 of section 307 would bar plaintiff’s recovery of collection fees only if the section 302 violation was willful. (See Walker v Security Trust Co., 85 Misc 2d 614.) In this case defendant produced no documentary evidence that Scutti Pontiac or Chemical Bank had the requisite scienter for the imposition of subdivision 2 of section 307 sanctions on which summary judgment could be granted.
Finally, this court is unconvinced that defendant’s sixth affirmative defense and counterclaim has merit. Paragraph four on the back of the installment contract, in pertinent part, reads as follows: “Unless buyer has named an agent on the face hereof, Seller or Seller’s Assignee shall procure such insurance as is checked * * * buyer hereby assigns to Seller, or successor in interest of Seller, monies not in excess of the unpaid balance hereunder which may become payable under such insurance, including unearned premiums” (emphasis added).
According to the plain meaning of its terms, paragraph four gives the dealer or the bank a security interest only in proceeds and unearned premiums of “such insurance as is checked”. However, no insurance coverage at all was checked on the face of the contract, and the contract reads, in bold print, “no coverage unless checked”. Thus, the court concludes that paragraph four is mere boilerplate, surplusage of no relevance to the case sub judice.
For the foregoing reasons, defendant’s motion for summary judgment against plaintiff, Chemical Bank, on defendant’s fourth, fifth and sixth affirmative defenses and counterclaims is denied. The cross motions of the plaintiff and of the third-party defendant for summary judgment dismissing the defendant’s fourth, fifth and sixth affirmative defenses and counterclaims are granted.

. The provisions of the Truth in Lending Act and regulation Z in effect at the time of the transaction at issue antedate the 1980 amendments to the Truth in Lending Act and the new regulations thereunder, and control the instant analysis.

. 12 CFR 226.4 (b).