Raymond SCOTT, Appellant,

v.

FOREST LAKE CHRYSLER–
PLYMOUTH–DODGE,
Respondent.

No. C7–03–368.

Court of Appeals of Minnesota.

Sept. 2, 2003.

Thomas J. Lyons, Jr., John H. Goolsby, Little Canada, MN, for appellant.

Gregory J. Johnson, Klay C. Ahrens, Johnson Provo–Petersen, L.L.P., St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge, HARTEN, Judge, and STONEBURNER, Judge.

## OPINION

MINGE, Judge.

Appellant challenges summary judgment dismissing his claims for intentional damages and limiting him to damages and attorney fees for an unintentional violation of Minnesota Motor Vehicle Retail Installment Sales Act (MMVRISA) under Minn. Stat. § 168.71 (2002). Because appellant vehicle purchaser does not claim that respondent auto dealer's deliberate failure to timely provide a copy of the sales agreement signed by the auto dealership caused or could cause any actual damages or harm, because the substantial statutory damages for intentional violations of MMVRISA are to deter practices that might cause harm to consumers, and because the district court did not abuse its discretion in determining allowable attorney fees, we determine that the remedy for respondent's technical violation of MMVRISA is limited to that allowed for unintentional violations of MMVRISA, and we affirm the district court's summary judgment order but modify the award of attorney fees.

## FACTS

In November 1995, appellant Raymond Scott traded in a 1991 Dodge Caravan for a 1995 Dodge Caravan at Forest Lake Chrysler–Plymouth–Dodge (Forest Lake Chrysler). This was not the first vehicle Scott had purchased from Forest Lake Chrysler. As he had done with his previous vehicle purchases, Scott financed the vehicle through the dealership and was provided with a retail installment contract containing the purchase price, applicable fees, interest rate, number of monthly payments, the amount of each monthly payment, and the total amount to be paid over time. A Forest Lake Chrysler representative did not sign the contract at the time of the transaction, but Scott received an unsigned copy of the agreement.

Scott filed several actions in both the United States district court and in Minnesota district court based on Forest Lake Chrysler's failure to deliver a signed copy of the agreement and other alleged violations of MMVRISA. The U.S. District Court action was dismissed; two of the state actions were appealed to the Minnesota Court of Appeals, and one of those was further appealed to the Minnesota Supreme Court. *See Scott v. Forest Lake*

*Chrysler–Plymouth–Dodge,* No. 3–96–671 (D.Minn. July 3, 1997); *Scott v. Forest Lake Chrysler–Plymouth–Dodge,* 637 N.W.2d 587 (Minn.App.2002); *Scott v. Forest Lake Chrysler–Plymouth–Dodge,* 598 N.W.2d 713 (Minn.App.1999), *rev'd,* 611 N.W.2d 346 (Minn.2000). At issue in those actions was the use of a conditional delivery agreement instead of a retail installment contract, the nonsigning of the contract by Forest Lake Chrysler, and Forest Lake Chrysler's intent. Appellant does not allege that he suffered, and he concedes that he did not suffer any loss, damage, inconvenience, or risk.

On May 24, 2002, the issue of Forest Lake Chrysler's intent came before the district court. The court defined intentional and unintentional, determined that Forest Lake Chrysler's actions were unintentional, and granted Forest Lake Chrysler's motion for summary judgment. The court ordered Forest Lake Chrysler to pay Scott $50 as a statutory penalty.

The issue of attorney fees was reserved and came on for hearing on September 27, 2002. Scott requested attorney fees in the amount of $116,022.45; the court awarded attorney fees in the amount of $4,063.47. This appeal followed.

## ISSUES

I. Is a vehicle purchaser entitled to the remedies provided for intentional violations of the Minnesota Motor Vehicle Retail Installment Sales Act when the act that violated the statute is intentional but is technical in nature and no actual damage or harm is claimed?

II. Did the district court err by awarding attorney fees and costs of $4,063.47?

## ANALYSIS

Scott appeals the district court's grant of summary judgment in favor of Forest Lake Chrysler. On appeal from a summary judgment determination, this court asks two questions: (1) are there any genuine issues of material fact; and (2) did the lower court err in the application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). This court accords the district court great deference and only sets aside the district court's factual findings if those findings are clearly erroneous. *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999). But this court is not bound by the district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### I.

The MMVRISA requires every retail installment contract to (1) be in writing; (2) contain all the agreements of the parties; and (3) be signed by both the buyer and the seller. Minn.Stat. § 168.71(a)(1) (2002). In 1995, when Scott purchased the vehicle, it was the customary practice of dealerships to give the buyer an unsigned copy of the contract. This was because only certain persons at a dealership were authorized to sign the contracts on behalf of the dealership, and these authorized persons were not always available to sign the contract at the time of sale.

The requirements for the elements of the retail installment contract were established by the Minnesota Motor Vehicle Retail Installment Sales Act, which was enacted in 1957. 1957 Minn. Laws ch. 266, § 6. The statute stated, both in 1957 and in 1995, when appellant purchased the vehicle, that "every retail installment contract shall be in writing, ... shall be signed by the retail buyer and seller, and a copy thereof shall be furnished to such retail

buyer at the time of the execution of the contract." Minn.Stat. § 168.71(a)(1) (1957 & 1994). At the time Scott purchased his vehicle, dealerships customarily provided purchasers with unsigned carbon copies of the contract, despite the statutory language requiring the dealership to provide the customer with a signed copy. In 1996, in response to several consumer lawsuits, the Minnesota legislature amended Minn. Stat. § 168.71(a)(1). 1996 Minn. Laws ch. 414, art. 1, § 33. The amended statute gives the dealership seven days from delivery of the vehicle to provide the buyer with a copy of the contract signed by both the buyer and the seller. Minn.Stat. § 168.71(a)(1) (1996 & 2002). In addition, the amendment allowed dealerships to cure the lack of delivery of any contract executed before the amendment, and not yet paid in full, by providing a signed copy of such contract to the buyer within 120 days of August 1, 1996. *Id.* Forest Lake Chrysler sent a letter to Scott's attorney, stating that upon the request of Scott or his attorney, Forest Lake Chrysler would deliver a signed copy of the document. Neither Scott nor his attorney made a request for the signed document, and Forest Lake Chrysler did not provide a copy of the signed contract. In the previous appeals brought by this appellant, this court and the Minnesota Supreme Court determined that the 1995 contract met all requirements of the MMVRISA save one: appellant was not provided with a copy of the contract signed by the seller within the 120–day grace period. At issue here is whether the district court erred by determining that the failure to provide appellant with a signed copy of the contract was an unintentional failure to comply with the statute.

An unintentional failure to comply with the statute allows the buyer to recover, as liquidated damages "three times the amount of any time price differential charged in excess of the amount authorized by section 168.66 to 168.77 or $50, whichever is greater, plus reasonable attorneys' fees." Minn.Stat. § 168.75(c) (2002). An intentional failure to comply is treated more harshly; the buyer has the right to recover as liquidated damages, "the whole of the contract due and payable, plus reasonable attorneys' fees." Minn.Stat. § 168.75(b) (2002). MMVRISA includes definitions of certain terms, but "intentional" and "unintentional" are not among those defined in the Act. Minn.Stat. §§ 168.011, .274 (2002).

The district court noted that the terms "intentional" and "unintentional" were not defined in the Act and that they needed to be defined in order to characterize Forest Lake Chrysler's actions. Relying on the civil jury instruction guide, the Restatement (Second) of Torts, and the legislative intent of the statute, the court determined that the

> legislature intended to define intentional violation as one in which there is proof of conduct substantially certain to result in harm, disadvantage to, or deceit of, the customer or to achieve an inequitable result ... the statute defines intentional as acting with the intent to deceive, or to achieve an inequitable result, or to take advantage of, or harm the customer.

The court determined that Scott had failed to show that Forest Lake Chrysler acted with malicious intent or a purposeful intent to deceive and that Scott was not damaged or harmed by the failure to provide a signed copy of the agreement. The district court therefore determined that as a matter of law Forest Lake Chrysler's actions were unintentional, awarded Scott $50, and granted summary judgment accordingly.

We determine that there are three options to bring a conclusion to this long, litigious saga. Our first option is to determine that the meaning of intentional or unintentional should be determined by applying Minn.Stat. § 645.08(1) (2002) (words in statutes "are construed according to rules of grammar and according to their common and approved usage"). Since it is clear that Forest Lake Chrysler deliberately decided to not send out a signed copy of the contract, its actions appear to be "intentional" according to the common dictionary definition of that word. That strict-construction approach would require us to reverse and remand this case with instructions to the district court that this violation is an intentional violation and that the court should award the damages required by Minn.Stat. § 168.75(b). The problem with this option is that the resulting damages would be "the whole of the contract due and payable," which would shock the conscience and violate the presumed legislative intent. In addition, the litigation connected with this matter has already gone on for seven years; a remand further protracts a final resolution and serves to increase the already hefty attorney fees and consume additional judicial resources.

Our second option is to uphold the previously summarized definition by the district court of "intentional failure" and thereby affirm the district court's decision. But this option ignores Minnesota law requiring that "words and phrases are construed according .... to their common and approved usage." Minn.Stat. § 645.08(1). Furthermore, upholding the district court's strained definition of "intentional" may come back to haunt claimants in other situations by raising the level of proof needed to sustain a claim for intentional damages.

Our third option is to hold that a technical violation without any claim of loss, damage, inconvenience, or risk does not justify the buyer's receipt of the substantial, intentional damages. While this option also ignores the plain meaning of "intentional failure to comply," it recognizes the purpose of the statute as repeatedly articulated by the Minnesota Supreme Court. Our supreme court determined that "the plain purpose of the MMVRISA is to require disclosure to consumers of the cost of credit extended to them, including sale price, amount of down payment, insurance charges, and finance charges." *Scott v. Forest Lake Chrysler–Plymouth–Dodge*, 611 N.W.2d 346, 351 (Minn.2000) (quotation omitted); *see also O'Brien v. Phillips Motors Excelsior, Inc.*, 288 Minn. 183, 185, 179 N.W.2d 158, 160 (1970) (stating that the "plain purpose of the provision is to inform the installment buyer of the cost of the credit extended to him"); *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 70, 93 N.W.2d 690, 696 (1958) (stating that part of the reason for the adoption of the MMVRISA was "to protect the purchasers of automobiles from the activities of a few individuals who had been guilty of inequitable practices in particular situations").

The third option is the best choice. The legislature did not intend that a technical violation of the statute would be used to enrich the buyer. Here the buyer did not incur any damages or harm. He purchased the vehicle, knew its cost, knew the cost of the financing, paid those costs, and drove that vehicle. By holding that a technical violation of the statute without any claim of loss does not justify the buyer's receipt of intentional damages, we avoid an award of significant damages to an appellant who does not even claim that any harm has occurred.

Truth in Lending cases in other states provide some support for the third option. In some cases, the courts have held that technical errors in a contract which do not undermine congressional policy are not actionable. *See, e.g., Chem. Bank v. Mayo,* 121 Misc.2d 781, 469 N.Y.S.2d 315, 318 (1983) (citing *Jumbo v. Nester Motors,* 428 F.Supp. 1085, 1087 (D.Ariz.1977)). Other cases have held that if the contract was in "substantial compliance" with the rules, there is not an intentional violation. *See Chem. Bank,* 469 N.Y.S.2d at 318 (citing cases).

We hold that a violation of the MMVRI-SA without a claim of loss, damage, or harm to the consumer is limited to the damages awarded for an unintentional violation of the statute.

## II.

 Appellant also contends that the district court erred by awarding attorney fees and costs of only $4,063.47 when appellant requested $116,022.45 in attorney fees and costs. "On review, this court will not reverse a trial court's award or denial of attorney fees absent an abuse of discretion." *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn. 1987) (citation omitted). The district court shall allow reasonable costs to a prevailing party in a district court action. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998). The district court "retains discretion to determine which party, if any, qualifies as a prevailing party." *Id.* at 54–55 (quotation omitted).

Here, appellant initially brought seven claims against Forest Lake Chrysler. Appellant lost on six of the claims. The district court determined that based on an unintentional failure to comply with the statute, and an award of $50 to appellant, the appellant was neither "victorious on the merits with respect to any of the violations specifically alleged in the complaint," nor did appellant allege in the complaint a right to recover under an unintentional violation of the statute. Thus, the court determined that appellant had "not met his burden of establishing entitlement to the award sought." The court's calculation of reasonable attorney fees excluded $2,245.32 for legal research on the grounds that such a charge should be included in the charges for the attorneys' time. The district court then divided the remaining requested fees by seven for the number of violations asserted in the original complaint, then divided by two because there was no recovery for any violation specifically alleged in the original complaint, and divided by two again. The resulting figure was $4,063.47, and the district court awarded that amount because it was more fairly commensurate with the $50 damage award.

It is clear that "reasonable" attorney fees can be awarded. Minn.Stat. § 168.75 (2002) (awarding reasonable attorney fees as part of the remedy for a statutory violation). The district court determines the reasonableness of the fees, and this court upholds the district court's determination unless the district court abuses its discretion. We agree with the district court's exclusion of the $2,245.32 in legal research fees, and we agree with the initial division by seven. However, a further discount is more difficult. We note that every aspect of this litigation has been strenuously contested, that the violation in question persisted and was effectively repeated after the legislature had established a window period and a method to cure past violations, and that the statute is clearly designed to cover attorney fees. Accordingly, we conclude that the district court should have stopped with excluding legal research and awarded attorney fees of $16,253.88, plus $50 in nominal statutory

damages for a total of $16,303.88. Due to the protracted nature of this proceeding and in the interest of judicial economy, we do not remand for yet further hearings.

## DECISION

Because appellant makes no claim of damages or harm from a car dealer's violation of MMVRISA, appellant is limited to damages for unintentional violations of that act. The district court's definition of intentional is modified, and its calculation of attorney fees is modified.

**Affirmed as modified.**