*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0447**

In re the Matter of: C. O., petitioner,
Appellant,

vs.

John and Jackie Doe,
Respondents.

**Filed November 17, 2014
Reversed
Reyes, Judge**

Washington County District Court
File No. 82F606007919

Mark A. Olson, Burnsville, Minnesota (for appellant)

Mark D. Fiddler, Fiddler Law Office, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Reilly, Judge.

# U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

On appeal after remand, appellant argues that the district court erred by limiting appellant's attorney fees award to $22,000 and by considering appellant's ability to pay as a factor in determining an appropriate fees award. Because the district court abused its discretion in calculating the award, we reverse.

## FACTS

Appellant is the biological father of A.D. Respondents John and Jackie Doe are A.D.'s adoptive parents. The underlying dispute originated out of a contact agreement between appellant and respondents pursuant to Minn. Stat. § 259.58 (2012). The contact agreement entered into by the parties defined the existence and extent of appellant's right to have contact with A.D. *Id.*

In 2006, appellant moved to enforce his rights under the contact agreement, and respondents moved to dismiss the motion. Respondents also requested that the district court terminate appellant's contact with A.D. pursuant to a provision in the agreement. Without conducting an evidentiary hearing, the district court heard arguments on the motions and granted respondents' request to terminate the contact under the agreement. *Id.* This court affirmed in an unpublished opinion. *C.O. v. Doe*, A07-0826 (Minn. App. Nov. 20, 2007) (*C.O.I*), *rev'd*, 757 N.W.2d 343 (Minn. 2008) (*C.O.II*). The supreme court granted review.

The supreme court held that the lack of an evidentiary hearing denied appellant due process and reversed and remanded the case to the district court. *C.O.II*, 757 N.W.2d at 348 n.8, 349–52. Appellant moved the supreme court for attorney fees on several grounds, including but not limited to Minn. Stat. § 549.211 (2012). The issue of attorney fees incurred on appeal by appellant was also remanded to the district court. *Id.*

On remand, the district court held the required evidentiary hearing. Because the parties made numerous motions in the district court, the court issued a series of orders. In relevant parts, those orders (1) denied respondents' motion to modify or terminate the

2

contact agreement and (2) awarded appellant $95,942.65 in attorney fees from respondents. *Id.* The district court entered judgment on the award of attorney fees on December 28, 2009.

Respondents appealed, arguing that the district court failed to make adequate findings to support its award in the amount of $95,942.65 to appellant. In an unpublished opinion, this court concluded that the district court did not address the factors set out in *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971), and remanded "for findings on the *Paulson* factors" and for the district court to "make adequate findings of fact to support whatever amount of fees [the district court] concludes is reasonable to award." *C.O. v. Doe*, No. A10-404, 2010 WL 4721531, at *11 (Minn. App. Nov. 23, 2010) (*C.O. III*), *review denied* (Minn. Feb. 15, 2011).

After that opinion was issued, appellant moved for attorney fees incurred on appeal, relying on Minn. Stat. § 259.58(c). This court granted the motion. *C.O. v. Doe*, No. A10-404 (Minn. App. Feb. 22, 2011) (order). We noted that, while it was normally "the better practice for appellate courts to determine the reasonableness of attorney fees claimed for appellate proceedings," we nonetheless held that "[t]he amount of attorney fees incurred in [appellant's] successful defense before this court . . . is remanded to the district court for further findings and proceedings." *Id.*

At the time of this second remand, the district court judge who presided over the previous proceedings had retired, and the matter was reassigned to another district court judge. This district court analyzed the *Paulson* factors and determined that "it is reasonable to award [appellant's] attorney fees for his legal representation, but not for the

3

350-plus hours that have been requested by [appellant's] attorney."[1] This district court also determined that a reasonable hourly rate was in the range of $200 to $250 and ordered respondents to pay $20,000 in attorney fees. Finally, it found that "an award of attorney fees for [appellant's] appeal is not warranted." *Id.* The order instructed respondents to pay within 120 days or judgment would be entered. Appellant appealed.

On appeal, appellant argued that the district court abused its discretion by awarding appellant only $20,000 in attorney fees and holding that appellant was not entitled to attorney fees for the prior appeal. This court reversed the district court's attorney fees award of $20,000 and remanded the matter for further conformity with its directives. *C.O. v. Doe*, No. A11-2166, 2012 WL 2505928, at *5, (Minn. App. July 2, 2012) (*C.O. IIII*). The remand instructed the district court to "(1) conduct a thorough and complete review of the documentation submitted in support of appellant's attorney-fees motion; (2) specifically identify a reasonable hourly rate in the $200-250 range; (3) specifically identify the number of hours appellant's attorney reasonably incurred in this matter; and (4) award appellant attorney fees accordingly." *Id.*, at *4. As to the award for the attorney fees incurred on appeal, this court awarded appellant fees in the amount of $15,500. *Id.* In doing so, this court found the district court "exceeded the scope of the remand instructions and abused its discretion" when it determined that an award of attorney fees for the appeals was not warranted. *Id.*

On the third remand, the district court awarded appellant $22,000 in attorney fees. The district court reincorporated the findings made in its previous order and added

---

[1] Specifically, appellant's attorney claimed 394.21 hours worked.

4

additional findings. In doing so, the district court found that, "given [appellant's attorney's] expertise in the family law area," it was reasonable to award fees at $220 per hour. The district court also identified the number of hours reasonably incurred in this matter. The district court began its calculation at 350 hours and found that 20 of those hours were for administrative tasks. The district court then found that, of the remaining 330 hours expended by appellant's attorney, many of them were "unreasonable and excessive due to the continued accumulation of billable hours without payment." The district court concluded that only 100 hours of billable work was reasonably incurred in this matter "given the excessive billing already determined by this court to be unreasonable, along with the 'results obtained' factor . . . , and the fact that any fee award should be considered a windfall." *Id.* In a footnote, the district court applied what it referred to as a "traditional" method of calculating attorney fees award—multiplying the number of hours incurred by the reasonable hourly rate—to reach an award of $22,000. *Id.* On January 17, 2014, the district court entered judgment nunc pro tunc to June 19, 2013. This appeal follows.

**D E C I S I O N**

"On review, this court will not reverse a [district] court's award or denial of attorney fees absent an abuse of discretion." *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987). The district court is most "familiar with all aspects of the action from its inception through post-trial motions" and therefore, is in the best position to evaluate the reasonableness of requested attorney fees. *Anderson v. Hunter, Keith, Marshall & Co., Inc.*, 417 N.W.2d 619, 629 (Minn. 1988). "The reasonableness of

5

the hours expended and the fees imposed raise questions of fact, and the district court's findings will be reversed only if they are clearly erroneous." *City of Maple Grove v. Marketline Constr. Capital, LLC*, 802 N.W.2d 809, 819-20 (Minn. App. 2011).

In Minnesota, the lodestar method of calculating attorney fees is used. *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 620 (Minn. 2008). The first step under this method requires the district court to determine the "lodestar" figure. *Anderson*, 417 N.W.2d at 628. This figure is determined by multiplying the "number of hours reasonably expended on the litigation" by a "reasonable hourly rate." *Id.* (quotations omitted). Reasonably expended hours do not include "hours that are excessive, redundant or otherwise unnecessary" on the theory that hours that could not be billed to a client cannot be billed to an adversary under statutory fee-shifting authority. *Id.* at 629 n. 10 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)). In determining the reasonableness of the hours and rates, the court considers "all relevant circumstances" under the *Paulson* factors, including the (1) time and labor required; (2) nature and difficulty of the responsibility assumed; (3) amount involved and the results obtained; (4) fees customarily charged for similar legal services; (5) experience, reputation, and ability of counsel; and (6) fee arrangement existing between counsel and the client. *Milner*, 748 N.W.2d at 621.

The second step in the lodestar analysis requires the court to "consider the results obtained in determining whether to adjust the fee upward or downward." *Johns v. Harborage I, Ltd.*, 585 N.W.2d 853, 863 (Minn. App. 1998) (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940). When there is a challenge as to the reasonableness of attorney

6

fees, the "trial court must provide a concise but clear explanation of its reasons for the fee award." *Id*. (quotations omitted).

## I. Reasonable hours expended

Appellant argues that the district court abused its discretion when it determined 100 hours as the reasonable number of hours incurred by appellant's attorney. We agree.

A district court abuses it discretion by making findings unsupported by the evidence or by improperly applying the law. *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). Here, the district court's finding that billing more than 350 hours was excessive and unreasonable, and its general finding that 100 hours was instead a reasonable number is not supported by the evidence of record. The district court failed to explain its justification of beginning at 350 hours when appellant's attorney provided evidence that 394.21 hours were incurred. Similarly, the 20-hour deduction for administrative matters is unsupported. And the reliance on the "results obtained" *Paulson* factor is misplaced when appellant prevailed at every juncture. Finally, the district court inappropriately considered two non-*Paulson* factors, namely appellant's ability to pay and that "any fee award should be considered a windfall." We address each issue in turn.

### A. Starting point of calculation

First, it is unclear how the district court identified 350 hours as the starting point of its analysis when appellant's attorney claimed 394.21 hours of work done. In both orders, the district court conceded that appellant's counsel expended *more than* 350 hours in this matter but began its analysis at 350 hours. Without any justification, the district

7

court made a conclusory finding that "incurring over 350 hours of billable work is questionable"[2] and began its analysis at 350 hours. Even when a district court accepts an attorney's claimed "hours expended" figure at face value, it still must provide findings to support the conclusion that it specifically scrutinized the claimed "hours expended" to determine its reasonableness. *Anderson*, 417 N.W.2d at 629. Here, no such explanation, other than a generalized and conclusory finding, is provided to justify the district court's rejection of appellant's attorney's 394.21 hours claimed.

## B.    Administrative-hours deduction

Similarly, the record does not support the district court's determination that 20 hours should be deducted because they represent "administrative matters, such as 'delivery of briefs for mailing,' etc." This finding relies on one entry of 0.50 hours to conclude that approximately 20 hours were billed for similar tasks. Just as in its previous order that we remanded, noticeably absent is an explanation on how the district court reached this number.

## C.    Final calculation by the district court

Finally, there is a lack of support in the record for the district court's final calculation of 100 hours as the reasonable number of hours expended. Even assuming that the district court was correct in determining that 20 hours should be deducted for administrative tasks from the 394.21 hours claimed, there still remain 374.21 hours

---

[2] It should be noted that during comparable time frames, respondents' attorney expended even more time than appellant's attorney on the case. While this is not a specific *Paulson* factor, it provides some perspective on the amount of time appellant's attorney spent on the case.

claimed by appellant's attorney. The district court provided no justification for its deduction of over 200 billable hours. And the record does not support this result. In its analysis of the *Paulson* factors, the court conceded that this was a complex case requiring extensive research. The court recognized that appellant's attorney was the only attorney working on the case and was responsible for conducting all of his own legal research. Moreover, this case has a long procedural history requiring appellant's attorney to prepare and argue appellant's case at all levels of the judicial system, including once at the supreme court. Despite these facts, the district court still concluded that appellant's attorney reasonably expended 100 hours. Because this generalized finding is contrary to the record, we hold that the district court abused its discretion when it significantly reduced the number of reasonable hours expended by appellant's attorney from 394.21 hours to 100 hours.

It appears the district court reached its final determination of 100 hours by relying on the "results obtained" *Paulson* factor and by inappropriately considering appellant's ability to pay. We address each of these in turn.

### 1. The "results obtained" *Paulson* factor

Whether a party has "prevailed" may impact the "results obtained" factor. In *Anderson*, the supreme court determined that the "results obtained factor is particularly crucial where a plaintiff is deemed prevailing even though he succeeded on only some of the claims for relief." 417 N.W.2d at 630 (quotations omitted) (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1941). Here, it is undisputed that appellant was the prevailing party at all stages of this matter and is entitled to an award of attorney fees under the statute.

However, the district court found this factor unfavorable for appellant, finding that the "relief sought was contact with a minor child" and that the "'contact' goal has not been advanced in any material way." The district court based this on an ex parte temporary order suspending appellant's contact with A.D. and a subsequent stipulated order to stay contact pending the appeal of attorney fees award. A review of this factor reveals that appellant remains the prevailing party and the resolution of the "contact" issue is not unfavorable to appellant.

Although appellant's right to have contact with A.D. has been stayed pending the appeal, this cannot be construed unfavorably against appellant. Nor does it support the district court's significant reduction in appellant's award of attorney fees. First, the temporary restraining order was granted ex parte, and therefore, the matter was never litigated between the parties and an evidentiary hearing never took place.[3] Second, following this order, the parties entered into a stipulated order to stay contact until the appeal of the attorney fees award is resolved. Again, this underscores the fact that the issue remains unresolved as it has not been fully adjudicated. At this point, no final results have been obtained by either party on this issue. Finally, the parties themselves stipulated that their agreement to stay contact "shall not be construed as a validation of either party's respective position." Therefore, the district court erred when it relied on the stay to find the "results obtained" factor unfavorable to appellant.

---

[3] It bears repeating that in 2006 the district court granted respondents' request to terminate contact without conducting an evidentiary hearing, and the supreme court reversed and remanded, holding that the lack of an evidentiary hearing denied appellant due process.

10

### 2. Appellant's ability to pay

Appellant challenges the district court's consideration of appellant's indigence in its calculation of the reasonable number of hours expended. Appellant asserts this is not one of the factors set out in *Paulson*, and it violates public policy interests in supporting fee-shifting statutes. We agree on both grounds.

First, as appellant points out, a party's ability to pay is not a factor under the *Paulson* analysis, nor does the statute instruct that a litigant's ability to pay be considered when awarding attorney fees. Minn. Stat. § 259.58. Second, the district court's consideration of appellant's indigence directly contravenes public policy supporting the existence of a fee-shifting statute. In similar contexts, the Minnesota Supreme Court has held that the purpose of fee-shifting statutes is to provide citizens with the means to pursue legal remedies that might otherwise be unavailable to them because of their indigence. *See, e.g., Sigurdson v. Isanti Cnty.*, 386 N.W.2d 715, 722 (Minn. 1986) (adopting federal standard for awarding attorney fees in cases under the Minnesota Human Rights Act to encourage the vindication of victim's rights, particularly where the relief sought is not a large sum of money, and to make legal counsel available in those cases). Fee-shifting statutes were designed to provide incentive to competent and experienced attorneys to accept cases even where damages may be minimal or non-existent. *See Liess v. Lindemyer*, 354 N.W.2d 556, 558 (Minn. App. 1984) (finding the purpose of a fee-shifting statute under the Civil Rights Attorney's Fee Award Act, is to "encourage lawyers to accept civil rights cases in which damages may be small, nominal, or non-existent"). We see no reason why those concerns are not implicated here. The

11

district court inappropriately considered appellant's ability to pay in its assessment and abused its discretion when it relied on this to significantly reduce the amount of hours reasonably expended.

### 3. Windfall

Finally, the district court abused its discretion when it made a finding that "any fee award should be considered a windfall." There is no support for this in the record nor does the court provide any justification for this generalized finding. Similar to its consideration of appellant's ability to pay, this is not one of the *Paulson* factors and it is unsubstantiated by the record.

## II. Reasonable hourly rate

Appellant next asserts that the district court erred in determining $220 an hour as a reasonable hourly rate. As previously delineated, particularly important to determining what amount is a reasonable hourly rate are the following *Paulson* factors: (1) the fees customarily charged for similar legal services; (2) the experience, reputation, and ability of counsel; and (3) the fee arrangement existing between counsel and the client. On remand we instructed the district court to specifically identify a reasonable hourly rate in the $200-$250 range and provide support under the *Paulson* factors.

In making the determination of fees customarily charged, market standards should prevail. *Hensley*, 461 U.S. at 447. The district court found that "while not unreasonable that someone with [appellant's] attorney's experience may charge up to $300 per hour for their legal expertise, [the] court typically sees fee requests of between $200 and $250 per hour." The district court then went on to determine $220 per hour as the rate it found to

be reasonable. But other than that conclusory statement, the district court failed to explain its reasoning for that determination under the *Paulson* factors.

First, in making its determination, the district court considered what, in its experience, was a typical request for a fee award. This is not the correct inquiry. The appropriate analysis requires consideration of the market standard as evidenced by not only what is commonly requested, but also by a careful examination of fees customarily charged and the specific experience and expertise of the attorney.[4]

Second, it is undisputed by the parties, and the district court found, that appellant's attorney has decades of experience in family law and has an extensive appellate practice. The positive results obtained by appellant's attorney, at all stages of the parties' litigation further demonstrate appellant's attorney's capabilities and expertise.

Finally, the fee arrangement itself, which is appropriate to consider under the *Paulson* factors, states that the agreed-upon rate is $300 an hour. For those reasons, we conclude the district court failed to analyze the *Paulson* factors appropriately to support its finding that $220 an hour was a reasonable rate.

---

[4] The district court did not address the testimony of the expert witness, a former president of both district and county bar associations, and a licensed attorney with extensive family law experience and appellate practice. The expert witness testified that, in his experience, $300 an hour is actually on the low end of the spectrum. The expert also provided testimony that he was familiar with rates charged by family law attorneys with the same amount of experience because he practiced in the same geographical area. The expert testified that he, himself, charges $350 an hour for family law matters. There is nothing to indicate that this uncontroverted testimony lacks credibility, and it is consistent with the district court's acknowledgement that $300 per hour is not unreasonable for someone with appellant's attorney's experience.

13

**III. Award modification**

Given the district court's abuse of its discretion in its erroneous application of the *Paulson* factors, the issues involved, the fees already incurred, the need for a resolution in this matter after eight years of litigation and in the interest of judicial economy, we decline to remand for further district court proceedings. *See Arundel v. Arundel*, 281 N.W.2d 663, 667 (Minn. 1979) ("[W]e are not free to substitute our judgment for that of the [district] court absent a clear abuse of its discretion."); *Scott v. Forest Lake Chrysler-Plymouth-Dodge*, 668 N.W.2d 45, 51 (Minn. App. 2003) (modifying the fee award rather than remanding "[d]ue to the protracted nature of this proceeding and in the interest of judicial economy").

Despite the lack of support in the record for the general number proposed by the district court as the reasonable number of hours spent on this matter, we nonetheless defer to the district court's determination that 20 hours were billed for administrative tasks. Therefore, we apply the lodestar method by beginning with the 394.21 hours billed and subtract 20 hours to determine that 374.21 is the number of hours reasonably expended by appellant's attorney. Similarly, while the district court did not provide a rationale for its hourly rate determination, it did identify an hourly rate in the $200-$250 range, and we defer to the district court's determination that $220 is a reasonable hourly rate. We therefore award appellant attorney fees in the amount of $82,326.20.[5]

---

[5] We base this award on what we conclude is a reasonable number of hours and hourly rate for this matter. Applying the lodestar method, we multiply 374.21 hours at $220 per hour, resulting in an award of $82,326.20.

## A.    Interest

Finally, appellant argues that the district court erred by failing to award interest beginning on December 29, 2009, the date that the district court first issued an order awarding appellant attorney fees. Minn. Stat. § 549.09, subd. 1(a) (2012), states, "when a judgment or award is for the recovery of money . . . interest from the time of the verdict, award, or report until judgment is finally entered shall be computed by the court administrator . . . and added to the judgment or award." *See also Cox v. Crown CoCo, Inc.*, 544 N.W.2d 490, 501 (Minn. 1996) (finding that the court's calculation of interest from the date the court issued an order entitling the party to attorney fees was appropriate as this was the date of entitlement). The district court's order awarding appellant attorney fees was issued on December 28, 2009. Interest should commence from the date that order was issued.

**Reversed.**