*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1820**

VH-Minneapolis South Inc,
Respondent,

vs.

TGI Friday's Inc.,
Defendant,

Akaashaman LLC,
Appellant.

**Filed August 11, 2025
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27-CV-20-12600

Patrick J. Rooney, Anna M. Swiecichowski, Fafinski Mark & Johnson, PA, Eden Prairie, Minnesota (for respondent)

Jeffrey M. Markowitz, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, Minnesota; and

Adam L. Massaro (pro hac vice), Reed Smith, Denver, Colorado (for appellant)

Considered and decided by Cochran, Presiding Judge; Reyes, Judge; and Schmidt, Judge.

**REYES**, Judge

Appellant-easement holder challenges the district court's award of monetary damages to respondent-property owner for nonpayment of easement expenses, arguing that respondent did not properly furnish expense invoices and failed to provide notice of default as required by the easement agreement.  We affirm.

## FACTS

This case arises from the nonpayment of expenses associated with a parking-lot easement.  Appellant Akaashaman LLC owns a TGI Friday's restaurant in Bloomington, and respondent VH-Minneapolis South (VH) owns a neighboring DoubleTree by Hilton hotel.  VH's property includes the parking lot immediately surrounding Akaashaman's restaurant (the common area).  Without an easement, Akaashaman would lack access to the parking lot.

### *The Easement*

The prior owners of the properties entered into an easement agreement in 1989.  The agreement grants the restaurant owner an easement that gives its guests and employees access to the entirety of the parking lot owned by the hotel owner.  The easement is perpetual and nonexclusive, runs with the land, and is binding upon successors in interest.

Under the agreement, the hotel owner is responsible for maintaining the common area, which includes keeping it safe, landscaped, insured, properly surfaced, adequately lit, and clean.  In exchange, the restaurant owner must reimburse the hotel owner a pro rata share of approximately 16% of the costs "reasonably and directly expended" by the hotel

owner. To be reimbursed, the hotel owner "shall furnish . . . a statement" detailing the common-area expenses within 45 days of the end of "each one-half calendar period." The hotel owner must keep records of the common-area expenses for at least 12 months following the delivery of each invoice. The restaurant owner, "subject to the right of reasonable verification," is required to "pay the invoice within twenty . . . days of receipt."

Under paragraph seven of the agreement, a party is in default under the agreement if it fails to comply with "any of its obligations under [the] [a]greement," provided that the noncompliance "continues for ten days after such party's receipt of notice of default pursuant to paragraph 14." Paragraph 14 states that "[n]otice *may* be given by . . . depositing written notice in the United States mail, certified mail" at the listed addresses "or such other address as may be designated from time to time by any party for itself." (Emphasis added.)

### *Initial Payment of Costs*

When Akaashaman, owned by Anil Yadav, purchased the restaurant property in December 2015, Bloomington Hotel Investors LLC (BHI) owned the hotel property. BHI's director of finance, Russell Huhner, would send the biannual invoices to individuals associated with Yadav, including Tejal Chokshi, Kevin Kevorkian, and Terry Sayles. Chokshi is the controller and chief financial officer for Yadav Enterprises, owned by Anil Yadav. Kevorkian is counsel for Yadav. Sayles is an employee of Yadav Enterprises and the director of operations for a subsidiary of the company. Akaashaman initially made all payments required under the agreement.

3

*Nonpayment*

Akaashaman failed to pay the common-area expenses for the first half of 2019 and failed to make any additional payments. In August 2019, Huhner sent an invoice for the first half of the year to Chokshi, Kevorkian, and Sayles. Huhner met with Sayles and Stacy Franklin, an employee of Yadav Enterprises, to discuss the common-area expenses. Franklin thought that the invoice overstated a fuel charge but otherwise did not dispute the invoice. Akaashaman did not pay this invoice, nor the invoice for the second half of 2019.

BHI reached out about the status of payment in April 2020, and Franklin responded that the restaurant was "prioritizing payments to food and payroll" given reduced restaurant sales stemming from the COVID-19 pandemic. Huhner sent invoices for the common-area expenses for the first half of 2020 in July 2020. He then emailed Chokshi and Sayles a demand letter regarding the unpaid expenses, indicating that the letter was the company's "FINAL NOTICE to resolve [the] debt before legal action." Chokshi acknowledged receipt of the email. None of the individuals who received the invoices on behalf of Akaashaman objected to this method of notice at any time.

### Sale to VH and Litigation

VH purchased the hotel property from BHI in late July 2020. VH paid BHI $140,064.13 for Akaashaman's unpaid expenses. BHI informed VH that Chokshi and Sayles were the proper individuals to whom VH should send the invoices. Jyoti Kapoor, who worked for VH's parent company, emailed Chokshi on August 19 that VH had purchased the hotel, provided notice that VH sought to terminate the agreement, and demanded payment for the unpaid common-area expenses. Kapoor sent a similar email to

4

Kevorkian and mentioned a previous phone call with him. She also had a phone call with Yadav, the owner of Akaashaman. On September 1, Kapoor emailed Kevorkian, indicating that VH would initiate legal proceedings if it did not receive a prompt response. About a week later, counsel for VH emailed Kevorkian a demand letter and sent it to a California address listed on the property deed as corresponding to Akaashaman.

VH filed a complaint on October 1, 2020, against TGI Friday's Inc., amending it on October 23 to add Akaashaman LLC as a defendant. It brought the following claims against Akaashaman: (1) declaratory judgment that Akaashaman is enjoined from using the common area until payment of all debts or, alternatively, declaratory judgment that the easement agreement is terminated; (2) default under the agreement; (3) unjust enrichment; and (4) account stated.

While the lawsuit was pending, Kapoor emailed Chokshi and Sayles an invoice for the second half of 2020, and VH's counsel sent a demand letter to Akaashaman's counsel. Kapoor subsequently sent invoices for the first and second half of 2021, 2022, and 2023.

Following a four-day court trial in January and February 2024, the district court issued an order in which it dismissed VH's declaratory-judgment, unjust-enrichment, and account-stated claims, but granted relief on VH's breach-of-contract claim in the amount of $343,200.27. The district court denied Akaashaman's motion for amended findings or a new trial. This appeal follows.[1]

---

[1] The district court's dismissal of claims against TGI Friday's Inc. is not at issue in this appeal.

**DECISION**

*Standards of Review*

"In a bench trial, this court is limited to determining whether the district court's findings are clearly erroneous and whether the court erred in its conclusions of law." *River City Mort. Corp. v. Baldus*, 695 N.W.2d 375, 377 (Minn. App. 2005). This court reviews a district court's legal conclusions de novo. *Id.*

Appellate courts review a district court's denial of posttrial motions for amended findings or a new trial for an abuse of discretion. *Est. of King*, 992 N.W.2d 410, 420 (Minn. App. 2023). A new trial may be granted if the decision "is not justified by the evidence[] or is contrary to law." Minn. R. Civ. P. 59.01(g).

**I.     VH properly furnished expense invoices for all but one of the six-month periods, and the one late invoice does not excuse Akaashaman's payment obligations for that invoice.**

Akaashaman argues that VH failed to fulfill a condition precedent to Akaashaman's performance by furnishing the invoices to individuals who were not employees of Akaashaman, meaning it did not have proper notice to dispute the common-area expenses. Akaashaman also argues that VH's 37-day late submission of the invoice for the second half of 2022 excused Akaashaman from paying this invoice. We are not persuaded.

**A.     VH properly furnished the invoices to Akaashaman.**

Akaashaman's primary argument with respect to the invoices is that the individuals to whom VH or prior owner, BHI, provided the invoices do not work for Akaashaman, indicating that VH did not provide proper notice. We disagree.

As explained above, the agreement requires that VH "furnish [Akaashaman] a statement covering the period just expired" "within forty-five (45) days following the end of each one-half calendar period." In turn, "[s]ubject to the right of reasonable verification by [Akaashaman], [Akaashaman] shall pay the invoice within twenty (20) days of receipt."

Here, the district court found that VH emailed the invoices to Chokshi, Kevorkian, Sayles, and Franklin. Akaashaman does not challenge this finding. The record supports Akaashaman's assertion that these individuals work for Yadav, the owner of Akaashaman, in other capacities rather than being formally employed by Akaashaman. These capacities include positions in Yadav's other businesses, including Yadav Enterprises and Central Florida Restaurants, and as Yadav's counsel.

However, these facts do not indicate that these individuals were not also acting on behalf of Akaashaman. As the district court noted, BHI and VH employees furnished the previous invoices to these individuals the same way, and Akaashaman paid all common-area expenses from December 2016 through 2018. Further, Sayles and Franklin held a meeting with a BHI employee at which they disputed a fuel charge listed on an invoice, which indicates that they were acting on behalf of Akaashaman. Akaashaman's argument that it did not have proper notice of these invoices is therefore unpersuasive.

Akaashaman relatedly argues that the district court impermissibly relied on extrinsic evidence by considering its prior conduct in paying the common-area expenses when BHI provided the relevant invoices to Chokshi, Kevorkian, Sayles, and Franklin. The parol-evidence rule is a rule of contract interpretation that prevents "the admission of extrinsic evidence" to explain the meaning of an unambiguous written contract. *Danielson v.*

7

*Danielson*, 721 N.W.2d 335, 338 (Minn. 2006). But "parol evidence is admissible to explain the parties' conduct subsequent to the written agreement." *Flynn v. Sawyer*, 272 N.W.2d 904, 908 (Minn. 1978). As VH notes, the district court did not use the evidence of the employees' conduct to interpret a contractual term. Rather, Akaashaman's payment of the common-area expenses after receipt of the invoices by Chokshi, Sayles, and Franklin, and Sayles's and Franklin's meeting with a BHI employee to discuss an invoice, are relevant to determining whether Akaashaman received adequate notice under the agreement. The district court therefore did not improperly consider extrinsic evidence.

**B.      VH's late notice of the invoice for the second half of 2022 does not excuse Akaashaman's payment obligation.**

Akaashaman argues that, assuming VH furnished the invoices to the proper individuals, VH's 37-day late submission of the invoice for the second half of 2022 excused Akaashaman from paying this invoice. VH concedes that it provided this invoice 37 days late but argues that providing an invoice within 45 days of each six-month calendar period is not a condition precedent to performance or a material contractual term.

We first address whether a timely invoice is a condition to performance. A condition precedent is a contract term that only requires the obligor's performance upon the occurrence of "some act . . . or event." *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 27 (Minn. 2018). Although "a condition precedent will not be found absent unequivocal language," *Mrozik Const., Inc. v. Lovering Assocs., Inc.*, 461 N.W.2d 49, 52 (Minn. App. 1990), a contract need not use "code words" to form a condition

8

precedent, *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974).

Paragraph four of the agreement provides that, "[w]ithin forty-five days following the end of one half calendar period, [VH] shall furnish [Akaashaman] a statement covering the period just expired." It further states, "[s]ubject to the right of reasonable verification by [Akaashaman], [Akaashaman] shall pay the invoice within twenty (20) days of receipt." The parties do not dispute that the receipt of an invoice at some point is a condition precedent to performance, but VH argues that notice within 45 days is not a condition precedent.

Because there is no "unequivocal language" delineating that a timely invoice is a condition precedent to performance, strict compliance with the 45-day notice period is not a condition precedent to performance. Rather, the broader purpose of this provision is to give Akaashaman an opportunity to verify the invoices prior to paying. While 37 days late, VH nevertheless gave Akaashaman the requisite opportunity to verify the invoice by furnishing it.[2]

We next address whether VH's late furnishing of the invoice is a material breach of the agreement. A material breach "goes to the root of the essence of the contract" and is "significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right

_____

[2] The situation might be different if VH provided the invoice after the 12-month record-retention period expired and Akaashaman was unable to inspect records to verify the accuracy of the common-area expenses.

9

to sue for damages." *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728 (Minn. App. 2011), *rev. dismissed* (Minn. Aug. 12, 2011); *see also Kuhn v. Dunn*, 8 N.W.3d 633, 640 (Minn. 2024) (explaining what constitutes material breach). In *BOB Acres*, this court concluded that failing to complete a property sale by the closing date was not a material breach of the purchase agreement. 797 N.W.2d at 725, 728-29. Similarly here, the late invoice is not a material breach of the agreement because it does not go to the "root" of the agreement of providing the restaurant owner with an easement to the hotel owner's parking lot in exchange for paying a share of the maintenance expenses. Because notice within 45 days is not a condition precedent to performance or a material contractual term, the late invoice for the second half of 2022 does not excuse Akaashaman's payment obligation.

## II. VH provided proper notice of default.

Akaashaman argues that VH failed to provide notice of default by certified mail and did not provide any notice of default for the nonpayments that occurred after litigation commenced. Akaashaman adds that, because proper notice of default was a condition precedent to it being in default, VH is unable to recover Akaashaman's unpaid easement expenses. We are unconvinced.

### A. The agreement does not require notice by certified mail.

Akaashaman argues that paragraph seven requires notice of default "pursuant to" paragraph 14, and paragraph 14 states that a party can provide notice of default only through certified mail. Akaashaman acknowledges that paragraph 14 includes the word

"may," but nonetheless asserts that the "pursuant to" language means that a party cannot give notice through a means not mentioned in paragraph 14.  We are not persuaded.

Appellate courts review a district court's contract interpretation de novo.  *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn. 2011).  "If a contract is unambiguous, the contract language must be given its plain and ordinary meaning, and shall be enforced by the courts even if the result is harsh."  *Trebelhorn v. Agrawal*, 905 N.W.2d 237, 242 (Minn. 2017) (quotation omitted).

As explained above, a party defaults under the agreement by failing to comply with "any of its obligations under [the] [a]greement," provided that the noncompliance "continues for ten days after such party's receipt of notice of default pursuant to paragraph 14."  Paragraph seven requires that the nondefaulting party give notice of default "pursuant to" paragraph 14.  "Pursuant to" means "[i]n compliance with[,] in accordance with[,]" or "[a]s authorized by."  Black's Law Dictionary 1495 (12th ed. 2024).  This language directs us to look to the type of notice that paragraph 14 allows.  Paragraph 14 provides that notice of default "*may* be given by . . . certified mail."  (Emphasis added.)  "[T]he word 'may' is generally permissive."  *Jundt v. Jundt*, 12 N.W.3d 201, 205 (Minn. App. 2024), *rev. denied* (Minn. Dec. 31, 2024).  Therefore, although paragraph 14 only mentions notice by certified mail, the use of "may" makes notice by certified mail permissive and not mandatory.  The agreement therefore does not require notice of default by certified mail.

**B.      VH provided adequate notice of default.**

The record indicates that VH gave Akaashaman notice of default on several occasions.  In August 2020, VH emailed Choksi a "Notice to Terminate the Easement and

11

Operating Agreement." This notice informed Chokshi that Akaashaman "has been defaulting on [its] payment since 2019" and threatened legal action. Also, a representative from VH had a phone call with Anil Yadav, the owner of Akaashaman, in which they discussed the lack of payment. Akaashaman concedes that counsel for VH emailed a demand letter for the invoice for the second half of 2020. VH therefore provided notice that Akaashaman had defaulted under the agreement.

Akaashaman additionally argues that VH failed to provide any notice of default for the nonpayments that occurred after VH filed the lawsuit in October 2020. The parties do not dispute that VH did not provide separate notices of default for the unpaid expenses for the second half of 2020 through the second half of 2023. However, the agreement merely states that default occurs upon failing to comply with any obligation in the agreement and continuing to default for ten days after receiving the notice. It does not require that separate notice be given for continuing acts of default, particularly when they are the same as the noticed acts of default.

Here, as evidenced by the demand letters and various communications, Akaashaman knew that it had defaulted on its payment obligations. And in a letter that Akaashaman's counsel received in February 2021, counsel for VH wrote that VH "reserves all rights and remedies, including the right to amend its complaint to include unpaid common area expenses for the 2nd half of 2020 *and any additional months/years* [Akaashaman] fails to pay common area expenses due under the easement agreement." (Emphasis added.) By referring to "additional months/years," VH put Akaashaman on notice that future nonpayment of the common-area expenses would constitute default, and the record does

not indicate that Akaashaman lacked the requisite opportunity to cure prior to being found liable for nonpayment. VH therefore provided proper notice of default to Akaashaman.

Because VH properly furnished the requisite invoices and provided proper notice of default, we conclude that the district court did not err by determining that Akaashaman is liable for the unpaid easement expenses and accordingly acted within its discretion by denying VH's motion for amended findings or a new trial.[3]

**Affirmed.**

---

[3] Because we conclude that the district court did not err in its determinations regarding the invoices and notices of default, we do not reach Akaashaman's argument regarding the disproportionate-forfeiture exception.